NORRIS, Judge.
This is a suit against Comeo Insurance Company for damages arising from Com-co’s alleged bad-faith refusal to settle a personal injury claim on behalf of its insured, M.B. Bearden. The plaintiffs, Frank L. Keith, Commercial Union Insurance Company (“CU”) and Western World Insurance Company (“Western”), are the conventional subrogees or assignees of Bearden’s rights against Comeo. Prior to trial, Com-eo filed an exception of prescription against CU; the trial court overruled it. Comeo then filed an exception of no cause or no right of action against CU and Western only; the court referred this to the merits. After trial the court rendered judgment in favor of the plaintiffs as prayed for, implicitly overruling the exception of no cause or no right of action. On appeal Comeo has conceded that the quantum awarded is correct if the plaintiffs’ action is valid and if the finding of bad faith failure to settle is not plainly wrong. Specifically, Comeo contests the:
(1) judgment overruling the exception of prescription against CU;
(2) implicit judgment overruling the exception of no cause or no right of action against CU and Western;
(3) finding that Comeo acted in bad faith in failing to negotiate a settlement within policy limits; and
(4) finding that Comeo had superior information as to Bearden’s exposure and failed to convey this to Bearden.
Since the appeal was perfected Comeo has settled with one plaintiff, Keith, but CU and Western remain as appellees. As the assignments present no reversible error, we affirm.

Facts

The accident and injury that led to the instant lawsuit are described in the opinion of the personal injury case. See Keith v. Bearden, 488 So.2d 1071 (La.App. 2d Cir.), amended and aff’d sub nom. Burton v. Foret, 498 So.2d 706 (1986). Briefly stated, Keith was driving his station wagon on a parish road in Ouachita Parish after dark one evening in September 1982. Suddenly two horses, owned by Bearden, sprang into Keith’s path from behind a willow tree whose draping foliage partly obscured his view. Keith collided with the horses.
Bearden was strictly liable under La.C.C. art. 2321. He had a homeowner’s policy with Comeo with limits of $100,000 for one person/one accident. On first appearance the accident was not serious. The station wagon was not badly damaged and Keith’s passengers were uninjured. Keith, however, complained of immediate pain in the left leg, hips and testicle. He told Bearden at the scene that he was “all right” but witnesses saw him limping. He missed only three days of work, returning after his family doctor could find no serious injury. Nevertheless, Keith continued to complain of pain and worked with the aid of medication.
Comco’s adjuster, L.A. Breard, decided that Keith had sustained a mild whiplash only. Keith attempted to settle with Breard for his property damage, medicals and lost wages. When this proved futile he retained counsel, C. Daniel Street. In February 1983 Keith offered, through Mr. Street, to settle the case for $8,000 plus special damages. Comeo retained attorney Charles Smith.
*1273 Keith filed original and amending petitions for personal injuries on March 9, 1983 naming only Bearden and Comeo as defendants. The petitions sought damages of $44,630, well within Comco’s policy limits. Comeo refused the $8,000 offer but countered with an offer of $4,500 plus medicals; Keith in turn countered in March 1983 with an offer to settle for $5,500 plus specials of about $1,600.
In response to Keith’s latest offer, Com-eo asked Keith to be independently examined by Dr. Belchic, an orthopedic surgeon in Ruston. Keith’s treating physician, Dr. Greer (a neurosurgeon), had performed a complete physical in July 1983; his report showed that Keith had suffered some aggravation of a preexisting spinal condition. In late August Keith’s attorney again offered to settle the case, this time for $12,-000 plus various specials. Comeo counter-offered a flat $7,500. Keith rejected this and moved to set the matter for trial.
About two weeks later, however, Keith offered to accept $9,500 plus specials. Mr. Smith relayed this offer to Comco’s claims supervisor, Don May, whose office was in Texas. Mr. Smith explained to Mr. May, as evidenced by their correspondence, that the claim could be worth from $7,500 plus specials to $10,000. Mr. Smith also conceded that Comco’s liability was undisputed under C.C. art. 2321. He entered a stipulation to this effect in a pretrial conference.
Mr. Smith and Mr. May discussed the matter on the phone but Mr. May instructed Mr. Smith to hold firm on their previous settlement offer of $7,500, which had already been rejected. Subsequently Mr. Street verbally offered to accept $8,000 plus specials but this too was rejected.
In late October 1983 Keith amended his petition to allege that Dr. Greer had diagnosed ruptured discs and to increase his prayer to over $900,000. Mr. Street sent a courtesy copy of the amended petition to Mr. Smith with a letter advising that as soon as he received Dr. Greer’s written report, he would forward it to Comeo together with an offer to settle for Comco’s policy limits of $100,000. Mr. Street’s letter also stated that the prior offer to settle for $8,000 plus specials was withdrawn.
Mr. Smith immediately conveyed this information to Mr. May, who did not write Bearden about it until December 2. The record shows that Dr. Greer was somewhat tardy in submitting his written report confirming the ruptured discs. Mr. Smith advised Mr. Street on November 30 that he had not yet received it, and further requested that Keith undergo an electromye-logram (EMG) at Dr. Belchic’s suggestion. Mr. May’s letter of December 2 to Bearden advised him that his liability might exceed Comco’s policy limit and recommended that he hire his own counsel. Bearden ultimately hired Thomas Davenport, apparently at Comco’s expense, but stayed in contact with Mr. Smith about the case.
In response to Mr. Smith’s request that Keith undergo an EMG, Mr. Street replied by letter on December 9, 1983 pointing out that the earlier described symptoms were consistent with a ruptured disc and that this condition would probably cause Keith to lose his job. Mr. Street enclosed various medical reports from Dr. Greer, including a CT scan showing a ruptured disc at L5/S1 and a bulging disc at L3/L4. Dr. Greer’s report also stated that upon review of the myelogram which a Dr. Hoot had read as negative, he found this myelogram showed a “definite bulging” at L3. Mr. Street’s letter included a settlement offer for Com-co’s policy limits of $100,000; the offer was good until 5:00 p.m. on Wednesday, December 28, 1983 and provided that Bearden would incur no personal liability. Mr. Smith informed Mr. May of this offer and deadline by letter of December 12. At the time, Bearden and Comeo were still the only defendants in the suit.
Mr. Street refused Comco’s request that Keith undergo an EMG by letter of December 16. On December 12, however, he made another offer to settle, this time for $90,000 plus property damage if Comeo would accept within 24 hours. Comeo took no action on either this or the prior offer. On December 27, in fact, Comeo moved to compel Keith to submit to the EMG. This motion was denied, as Keith was scheduled *1274 for surgery on January 20, 1984, a fact of which Comeo was aware.
Keith ultimately underwent two laminec-tomies in January and February 1984. Dr. Greer assigned a disability rating of 55-70%. In February 1984 Keith amended his petition to add the Ouachita Parish Police Jury as defendant on a theory of strict liability, La.C.C. art. 2317. In March he added the Police Jury’s primary insurer, CU. The Police Jury did not cross-claim Bearden.
After the surgeries and the Police Jury's joinder Comeo offered in March 1984 to settle for its policy limits, $100,000; Keith rejected it. In January 1985, however, Keith proposed a joint settlement whereby Comeo would pay $150,000 (more than policy limits) and CU would pay $500,000 (its policy limits). Comeo agreed to this and tendered its share but CU would not accept. Comeo then offered $150,000 separately, but Keith refused this, fearing that by releasing Comeo and Bearden he would significantly reduce his recovery.
Keith’s personal injury suit went to trial in January and February 1985. By judgment of June 26, 1985, the court awarded Keith damages of $822,256.99, assessed fault 80% to Bearden and 20% to the Police Jury, and limited recovery against Comeo to the policy limits of $100,000.
Comeo promptly placed its policy limits plus interest and costs, $127,649.68, in the registry of the court and Keith withdrew it. The Police Jury and CU took a suspensive appeal on July 31, 1985, challenging any allocation of fault to the Police Jury. However, CU settled with Keith on October 15, 1985. By their agreement CU paid Keith $490,000, or slightly under its policy limits. In exchange, Keith released CU and the Police Jury but expressly reserved his rights against Western. Their agreement further recited:
APPEARER [Frank L. Keith] joined by CU and POLICE JURY declared and acknowledged that they each have and intend to pursue an excess claim against BEARDEN and COMCO, and this release is not to in any way inure to the benefit of BEARDEN and/or COMCO; that should this excess claim be successfully asserted, KEITH is to receive such amounts that will allow him to be paid the full amount of his judgment, including principal, interest and costs, and CU and POLICE JURY shall be reimbursed the portion of BEARDEN’s liability paid by them.
After this agreement, CU was dismissed and the Police Jury converted its appeal from suspensive to devolutive. Keith apparently brought a separate action against the Police Jury’s excess insurer, Western, after the appeal was made devolutive.
This court rendered judgment in the personal injury case on May 7, 1986. We affirmed the quantum and the finding of causation but increased the Police Jury’s share of liability to 35%. Keith v. Bearden, supra. The Supreme Court granted Keith’s application for writs on July 1, 1986, to consider legal interest and a “close quantum question.”
Before the Supreme Court’s decision, however, Keith settled with Western on July 28, 1986 for $278,448.12. Keith granted a partial release in Western’s favor only and reserved his rights against Bearden and Comeo with the following proviso:
[I]n the event that recovery is made against M.B. Bearden and/or Comeo Insurance Company [on the excess claim] in excess of any sums Frank Keith is entitled to under the present judgment herein or as ultimately modified by the Louisiana Supreme Court or any other court, Western World Insurance Company shall be reimbursed from said excess sums the portion of M.B. Bearden’s and Comeo Insurance Company’s liability paid by them.
By opinion dated September 24, 1986 the Supreme Court held that all defendants, no matter when joined, owed legal interest from the date of the original petition. It also affirmed Keith’s damages for loss of earning capacity even though this was perhaps “on the low side.” Burton v. Foret, supra.
Bearden, Keith, CU, the Police Jury and Western executed a release and assign *1275 ment on February 9, 1987. By this agreement the parties acknowledged that Keith’s judgment had not yet been paid in full. CU and Western stated that they had made payments in excess of their percentage of liability and thus had possible claims of indemnification or contribution against Bearden; that Bearden was financially unable to pay these claims; but that Bearden had a right and cause of action against Comeo for its failure and refusal to settle the case within policy limits on several occasions. In exchange for an agreement not to pursue Bearden personally on these claims, Bearden assigned to Keith, CU, the Police Jury and Western, “as their respective interests may appear,” all his rights and causes of action against Comeo for failure to settle. The parties further agreed that “this release shall not inure to the benefit of Comeo in any manner whatsoever.”
The plaintiffs, Keith, CU and Western, brought the instant suit on March 27, 1987, asserting Bearden’s claims against Comeo. As noted, Comco’s exception of prescription was overruled and its exception of no cause or right of action was referred to the merits. The trial court, in written reasons for judgment, found that Comeo possessed, but failed to furnish to Bearden, superior information about his excess exposure; that its conduct in failing to settle within policy limits did not meet the standard of care expected of a skilled, professional defender of lawsuits; and that by refusing to negotiate Comeo voluntarily exposed itself to additional liability. The court rendered judgment in favor of the plaintiffs as follows:
Frank Keith $226,359.17
CU 157,002.45
Western 278,448.12
Comeo appeals suspensively.

Discussion: Prescription and no cause/right of action

By its first assignment Comeo urges the trial court erred in overruling its exception of prescription against CU. Comeo argues that CU’s action is really one for contribution among solidary co-tortfeasors; that such actions prescribe in one year from the date when the co-tortfeasor paid the debt or, in this case, one year from October 15, 1985 (actually the date CU settled with Keith); and that the instant lawsuit of March 27, 1987, was not timely.
By its second assignment Comeo urges CU and Western had no cause or right of action. Much of this argument is contingent on classifying the action as one for contribution. In essence, Comeo argues that CU and Western paid none of a joint obligor’s debt when they settled; this means they have no claim for contribution against Bearden or Comeo; and thus Bear-den’s assignment to CU and Western, of his rights against Comeo, must fail for lack of consideration.
We disagree with Comco’s characterization of the causé of action. The law allows contribution only between tort-feasors who are solidarily liable. La.C.C. art. 1804; Narcise v. Illinois Cent. R. Co., 427 So.2d 1192 (La.1983). As the parties were originally aligned, Comeo was solidar-ily liable, along with Bearden, the Police Jury and its insurers, for only the first $100,000 of loss occasioned by Bearden’s conduct. Neither Keith, the Police Jury nor its insurers had any further direct access to Comeo. Fertitta v. Allstate Ins. Co., 462 So.2d 159 (La.1985). There was no solidary liability between Comeo and Keith, the Police Jury or its insurers over $100,-000.
Bearden, in his turn, was solidarily liable with the Police Jury for the whole amount under La.C.C. art. 2324 as it provided at the time. If the Police Jury’s insurers, CU and Western, had paid more than the Police Jury’s virile portion, then they would have had a right of contribution against Bearden personally. They did not have such a right against Comeo because Comeo was not soli-darily liable with them for more than $100,-000. CU and Western therefore could not assert contribution against Comeo.
Bearden’s insurance policy with Comeo obligated Comeo to exercise good faith in defending him, including a duty to settle within policy limits if necessary to protect his financial interests. Bearden would be able to assert a cause of action against *1276 Comeo if he alleged that Comeo breached that duty.
By their agreement of February 9, 1987, Bearden assigned his cause of action against Comeo to CU, Western and Keith. The parties’ intent obviously was to allow CU, Western and Keith to step into Bear-den’s position and assert his cause of action (for failure to settle) against Comeo. Whether this agreement is understood as a conventional assignment or subrogation, its effect was to give CU, Western and Keith Bearden’s rights against Comeo. La.C.C. art. 1827; Great Southwest Fire Ins. Co. v. CNA Ins. Cos., 557 So.2d 966 (La.1990).
The rules as to prescription and remission of debt among solidary obligors are therefore not applicable to this case. Cases such as Thomas v. W & W Clarklift Inc., 375 So.2d 375 (La.1979), U.S. Fidelity & Guar. Co. v. Safeco Ins. Co., 420 So.2d 484 (La.App. 1st Cir.1982), and Harvey v. Travelers Ins. Co., 163 So.2d 915 (La.App. 3d Cir.1964), are distinguished.
We conclude that the parties intended for Keith, CU and Western to assert Bearden’s cause of action against Comeo. They were conventionally subrogated by assignment to Bearden’s place and are now asserting his contractual rights against Comeo. La. C.C. art. 1826.
An action against an insurer for failure to defend a claim or settle within policy limits is in contract. Wooten v. Central Mut. Ins. Co., 182 So.2d 146 (La.App. 3d Cir.1964); Comment, “Duty of Insurer to Settle,” 30 La.L.Rev. 622, 628-633 (1970). It therefore prescribes in 10 years. La.C.C. art. 3499. The quantum and allocation of fault were affirmed by this court in May 1986. The instant action, filed in March 1987, is timely. The trial court did not err in overruling the exception of prescription.
We likewise find no error in the failure to sustain the exception of no cause or right of action. Bearden had a right of action against Comeo and could conventionally assign or subrogate this to CU and Western. La.C.C. arts. 2642, 1827. CU and Western obviously have the right to bring this action. La.C.C.P. art. 697; Commercial Union Assur. Cos. v. Carter, 392 So.2d 184 (La.App. 2d Cir.1980); Audubon Ins. Co. v. Francois, 315 So.2d 354 (La.App. 4th Cir.1975).
Comeo reiterates its argument that CU and Western's claim of contribution had prescribed; and that because they settled their claims with Keith before the judgment was final in Keith v. Bearden, they lost their right of contribution against him. See Harvey v. Travelers Ins. Co., supra; Diggs v. Hood, 772 F.2d 190 (5th Cir.1985). If this right was lost, they argue, then Bearden’s assignment of his rights against Comeo must fail for lack of consideration. We would agree that the partial release with reservation of rights, executed after the trial court’s judgment but before final appellate disposition (and when CU and the Police Jury had a suspen-sive appeal pending) had the same effect as a settlement between a plaintiff and a co-tortfeasor prior to trial. Joseph v. Ford Motor Co., 509 So.2d 1 (La.1987). Indeed, when one co-tortfeasor settles, he loses his right of contribution against a nonsettling co-tortfeasor.
We do not agree, however, that this state of affairs destroys the agreement between Bearden, Keith, CU and Western. The ultimate debtor (in this case, Comeo) cannot question the validity or the consideration of a transfer or assignment of a debt unless he can show prejudice. Bonner v. Beaird, 43 La.Ann. 1036, 10 So. 373 (1891); Zurich Ins. Co. v. Grain Dealers Mut. Ins. Co., 169 So.2d 6 (La.App. 2d Cir.1964), and citations therein. There is no allegation of prejudice against Comeo as the assignment did not deprive Comeo of any rights it could have asserted against Bearden. Zurich Ins. Co. v. Grain Dealers Mut. Ins. Co., supra. Furthermore, Comeo cannot argue that Keith had no excess claim against Bearden and thus no consideration for the assignment. There was consideration in that the settlement agreements expressly reserved Keith’s rights against Bearden, and Keith made special arrangements to share the excess with CU and Western to the extent they might have *1277 overpaid. We would also note that Western’s settlement agreement with Keith, coming after the judgment in Keith v. Bearden was exigible, was more akin to a payment in satisfaction of judgment; in that event, Western was entitled to contribution against Bearden. La.C.C. 1804. We find no merit in Comco’s argument.
The exception of no cause of action is a procedural device to test whether, under the allegations of the petition, the law affords any remedy for the grievance asserted. La.C.C.P. art. 931; McIntyre v. McIntyre, 519 So.2d 317 (La.App. 2d Cir.1987). In ruling on the exception, the court must accept as true all allegations of the petition and sustain the exception only if the law affords no remedy under any evidence admissible under the pleadings. Darville v. Texaco Inc., 447 So.2d 473 (La.App. 5th Cir.), writ denied 448 So.2d 1302 (1984). If a petition states a cause of action as to any ground or portion of the demand, the exception must be overruled. Pitre v. Opelousas General Hosp., 530 So.2d 1151, 74 A.L.R. 4th 777 (La.1988). The instant petition alleges that Comeo “never made a bona fide offer or attempt to settle this claim within its policy limit, even after receiving information showing an injury which would be greatly in excess of its policy limit.” The law provides a remedy for this claim. See Roberie v. Southern Farm Bureau Cas. Ins. Co., 250 La. 105, 194 So.2d 713 (1967); Cousins v. State Farm Mut. Auto. Ins. Co., 294 So.2d 272 (La.App. 1st Cir.), writ denied 296 So.2d 837 (1974). The trial court did not err in failing to sustain the exception of no cause of action.
These assignments lack merit.

Bad faith failure to settle

By its third and fourth assignments of error Comeo contests the trial court’s conclusion that Comeo acted in bad faith in failing to settle within policy limits as well as the finding that Comeo failed fully to inform Bearden that there were settlement offers which, if accepted, would have completely protected him from excess judgment.
The trial court’s opinion admittedly shows some perplexity as to the proper standard owed by an insurer to its insured. The court, however, found a breach and the appeal is from this judgment under the appropriate standard. Hardin v. Munchies Food Store, 510 So.2d 33 (La.App. 2d Cir.1987); Cason v. Oglesby, 188 So.2d 718 (La.App. 2d Cir.), writ denied 249 La. 842, 191 So.2d 642 (1966).
Louisiana jurisprudence holds that the insurer is the champion of its insured’s interests; the interests of the insured are paramount to those of the insurer, and the insurer may not gamble with the funds and resources of its policyholders. Shelton v. Commercial Union Assur. Co., 396 So.2d 1379 (La.App. 2d Cir.1981); Cousins v. State Farm Mut. Auto. Ins. Co., supra. When an offer to settle is made, the insurer owes a duty to act in good faith and to deal fairly in order to protect the insured from exposure to excess liability. Holtzclaw v. Falco Inc., 355 So.2d 1279 (La.1978); Fertitta v. Allstate Ins. Co., supra. The insurer, as a professional defender of lawsuits, is held to a standard higher than that of an unskilled practitioner; what may be neglect on the part of the latter may well constitute bad faith on the part of the insurer. Younger v. Lumbermens Mut. Cas. Co., 174 So.2d 672 (La.App. 3d Cir.), writ denied 247 La. 1086, 176 So.2d 145 (1965). The insurer is not required to settle a claim within policy limits under penalty of absolute liability for any excess judgment rendered against the insured, but the insurer may be liable for the excess judgment if its refusal to settle within policy limits is found to be arbitrary or in bad faith. Cousins v. State Farm, supra, and citations therein. Liability is not predicated on failure to predict the correct outcome of the action, but rather on whether the insurer unreasonably exposed its insured to a judgment in excess of policy limits, and whether the proposed settlements are rejected conscientiously in terms of deliberate judgment evaluation rather than for inadequate or no reason. Younger v. Lumbermens Mut. Cas. Co., supra. A determination as to what constitutes bad *1278 faith or lack of good faith depends on the facts and circumstances of each case. Roberie v. Southern Farm Bureau Cas. Ins. Co., supra. The courts look to various factors to evaluate whether an insurer is in bad faith for failure to compromise a case within policy limits:
(1) the probability of the insured’s liability;
(2) the adequacy of the insurer’s investigation of the claim;
(3) the extent of damages recoverable in excess of policy coverage;
(4) rejection of offers in settlement after trial;
(5) the extent of the insured’s exposure as compared to that of the insurer; and
(6) the nondisclosure of relevant factors by the insured or insurer.
Cousins v. State Farm, supra; Shelton v. Commercial Union, supra.
The trial court’s findings are entitled to great weight and should not be disturbed on appeal in the absence of manifest error. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). The trial court’s findings, when based on a credibility assessment of either live witnesses or documentary evidence, cannot be reversed unless the error is manifest. Rosell v. Esco, 549 So.2d 840 (La.1989); Virgil v. American Guar. & Liab. Ins. Co., 507 So.2d 825 (La.1987).
The trial court carefully and painstakingly analyzed the facts as they pertained to the Cousins factors. Comco’s main contentions with the analysis are that there was a genuine question of causation and that Comeo was completely entitled to withhold offers until Keith underwent an EMG.
The trial court adequately disposed of Comco’s first contention in its discussion of the first Cousins factor. It was clear from the outset that Bearden would be strictly liable for the damage caused by his animals. La.C.C. art. 2321. Comco’s adjusters acknowledged this three weeks after the accident and its counsel stipulated to it in October 1983. Mr. May testified that there was some speculation that an alleged second accident might have aggravated Keith’s condition. No evidence, however, of the second accident was brought to trial. Mr. Smith, Comco’s counsel, received a police report of the “second” accident in October 1983 and forwarded this to Mr. May; it showed that the “second” accident occurred before the instant accident and that Keith was not injured in it. Comeo speculated that Keith’s continued employment may have aggravated his back, but there was no evidence to this effect either. The trial court felt that once Comeo received Dr. Greer’s reports it could have redeposed him or Keith and learned that Keith’s current condition related back to the September 1982 accident. The treating physician’s opinion is entitled to great weight. Loyd v. IMC Fertilizer Inc., 557 So.2d 1078 (La.App. 2d Cir.), writ denied 561 So.2d 102 (1990). On the facts presented the court concluded that Comeo knew or should have known that it would be held liable for all Keith’s damages. Notably Keith had not yet joined the Police Jury as a defendant and there was no co-tortfeasor with whom damages could be shared.
The trial court adequately disposed of Comco’s second contention in its discussion of the third Cousins factor. Comeo argues that Dr. Greer’s report indicates contradictory test results, interpreting the myelo-gram as “normal” but the CT scan as showing a herniated disc. The EMG, Com-eo urges, was needed to clear up the inconsistency. Dr. Greer’s report, however, did not find the myelogram “negative.” [1] Given this report, Comeo could not argue that the proposed EMG would have negated Dr. Greer’s diagnosis or obviated the need for surgery as scheduled. Rather, the court viewed Comco’s steadfast request for an EMG as part of a plan, evidenced by internal memos, to withhold any offers over $7,500 until the exact degree of disability and the effect on earning capacity was determined. We also question the sincerity *1279 of insisting on the EMG since Keith was already set for surgery; regardless of the outcome of the EMG (which is not as reliable as a myelogram), it would not have invalidated Dr. Greer’s diagnosis of disc injury and certainly would not have affected the issue of causation. The court did not err in finding that Comeo should have realized that Keith needed surgery and that he would probably sustain damages far greater than Bearden’s coverage.
Under the second Cousins factor, the trial court found that by December 1983, Comeo knew that Keith’s continued symptoms were consistent with disc involvement; Comeo had admitted causation; it knew what Keith did for a living and how much he earned; it knew what the treating physician had diagnosed and that potential damages exceeded Bearden’s coverage. Comco’s investigation was adequate for an appreciation of the magnitude of the case but Comeo did not act on its findings as a skilled, professional defender of lawsuits.
Evidence under the fourth Cousins factor was not really conclusive. Comeo offered more than its policy limits shortly before trial, but only after surgical proof that Keith’s injuries would result in damages that exceeded policy limits; Keith had also joined the Police Jury by this time. We feel that Comeo knew nothing more about causation in March 1984 than it should have known in December 1983, when it failed to accept offers within policy limits, extend any counter-offers or at least ask for an extension of time. The post-surgery offers, made jointly with CU, admittedly failed because of CU’s conduct, not Comco’s. Keith was also justified in rejecting Comeo’s final offer; had he settled with Comeo alone he would have limited his recovery from the Police Jury’s insurers to 35% of his damage. These last offers do little to evidence good faith on Comco’s part under these circumstances.
Under the fifth Cousins factor, the court cited the negotiations of December 1983. During that month Keith extended two offers which, if accepted, would have protected Bearden from all personal exposure. The court found that Comeo failed to inform Bearden fully of the December 1983 offers or their significance; this amounted to a lack of “any particular solicitude” for Bearden’s interest until after Keith’s first surgery. The court found this factor militated strongly against Comeo.
Comco’s fourth assignment, contesting the finding that it failed to fully inform or disclose its superior knowledge to Bearden, is adequately discussed under the sixth Cousins factor. The court found that Bearden himself was resolute in his belief that the accident could not have caused a ruptured disc. He learned in October 1983 that Keith had increased his prayer for damages from under $50,000 to over $900,-000 on the strength of a diagnosis from Dr. Greer. However, the court found no evidence that Comeo attempted to explain to Bearden that a disc injury could require a long time before a correct diagnosis. Moreover, Keith’s undisputed symptoms were those usually associated with disc injury. In fact, the court noted Bearden’s testimony that no one ever told him that Keith had offered a settlement within policy limits or that this would have been in his best interest. Comeo did not have to relay each and every offer to its insured but it possessed superior knowledge of crucial facts and legal opinions that it did not convey to Bearden. The finding that Com-eo did not disclose this critical information to Bearden was strongly indicative of bad faith.
Given all the facts and circumstances we cannot say the trial court was plainly wrong in finding that Comeo breached its duty of good faith in negotiating for a settlement within policy limits to protect Bearden from excess judgment. The evidence also supports the conclusion that Comeo possessed superior knowledge of which it did not fully inform Bearden.
Counsel for Comeo contended at oral argument that this was a case of “Monday-morning quarterbacking”; with the benefit of hindsight almost any settlement decision can be looked on as poor judgment. We are not saying that mere poor judgment is the basis of an award for bad faith failure to settle within policy limits. Cases like *1280 Cousins v. State Farm, supra, and Moskau v. Insurance Co. of N. Amer., 366 So.2d 1004 (La.App. 1st Cir.1978), show that the law of bad faith should be cautiously applied and findings of bad faith skeptically viewed. Here, in addition to the facts outlined by the trial court, we are impressed with the fact that this was a strict liability case and Comeo had no defense against causation; Comeo resolutely refused to accept the treating physician’s findings, diagnosis or recommended treatment; and that Keith’s December 1983 offers, if accepted, would have totally insulated Bearden’s assets. Under the circumstances we detect no manifest error in the trial court’s findings or conclusions.

Conclusion

For the reasons expressed, the judgment is affirmed. Costs are assessed to the appellant, Comeo Insurance Company.
AFFIRMED.

. When this court reviewed Keith's personal injury appeal in May 1986, we interpreted Dr. Greer's report as showing that both tests, read together, revealed a bulging disc and nerve impingement. 488 So.2d at 1080.