803 So.2d 1028 (2001)
Bobbie M. ROLLINS, et al., Plaintiff-Appellant,
v.
Johnny M. RICHARDSON, Jr., et al., Defendant-Appellee.
No. 35,171-CA.
Court of Appeal of Louisiana, Second Circuit.
December 7, 2001.
Rehearing Denied January 17, 2002.
*1029 Patricia N. Miramon, Shreveport, Counsel for Appellant.
Rountree, Cox, Guin & Achee, by Dale G. Cox, Mary Lou Blackley, Shreveport, Counsel for Appellee, Allstate Insurance Company.
Law Office of Charles G. Tutt, Shreveport, by Thomas A. Bordelon, Natchitoches, Counsel for Appellee, City of Shreveport.
Before BROWN, GASKINS and CARAWAY, JJ.
CARAWAY, J.
The appellant in this tort action sued the alleged tortfeasors and their homeowner's insurer. After a coverage dispute was raised by the insurer and separate counsel provided for its insureds, the appellants and the insureds entered into a compromise, and suit was dismissed against the *1030 insureds. On the insurer's motion for summary judgment, the trial court dismissed in part appellants' direct action claim against the insurer determining that the policy coverage ended upon the compromise by the extinguishment of the insureds' delictual obligation. Appellants appealed the ruling and the insurer answered the appeal contesting the trial court's failure to dismiss other claims against it. We affirm the trial court's grant of summary judgment in favor of the insurer, reverse its other ruling on related claims and dismiss the insurer from this action.

Facts
Bobbie Rollins ("Rollins"), Tajessica Lucky's mother, sued Annie and Johnnie Richardson (the "Richardsons") after Tajessica developed mediastinal fibrosis, a severe and debilitating illness. The petition alleged that Rollins and the Richardsons were neighbors, and that the Richardsons continuously kept farm animals, including chickens, and restaurant waste on their property.[1] The suit claims that Tajessica's illness is the direct result from the waste on the Richardsons' property.
The Richardsons answered, denied liability and filed a third-party demand against their insurer, Allstate Insurance Company ("Allstate"). The Richardsons' third-party demand stated that Allstate provided a homeowner's policy to the Richardsons, and they prayed for judgment against Allstate for full indemnification under the policy in the event of an adverse judgment against them. The Richardsons did not make any specific claims in their third-party demand against Allstate for bad faith investigation of the claim, bad faith failure to settle or adjust the claim, or bad faith failure to provide them with a defense.
Answering the Richardsons' third-party demands, Allstate denied coverage under a policy exclusion regarding bodily injury resulting from discharge, dispersal, release or escape of vapors, fumes, acids, toxic chemicals, toxic gases, toxic liquids and solids, waste materials or other irritants, contaminants or pollutants (hereinafter referred to as the "Pollution Exclusion"). Plaintiffs later filed an amended petition and added Allstate as a defendant.
On March 10, 2000, an "Assignment of Rights and Subrogation Agreement" was executed between the Richardsons and Rollins which states that in consideration for being dismissed from the suit, the Richardsons "assign, relinquish, transfer, and subrogate unto plaintiffs ... any claims or rights against Allstate Insurance Company pursuant to any policy issued..." to the Richardsons. Furthermore, the Richardsons transferred to Rollins any rights they had pursuant to their third-party demand filed against Allstate. On March 20, 2000, Rollins filed a partial motion to dismiss the Richardsons from this suit with prejudice, reserving all rights against any remaining defendants. More specifically, Rollins reserved "any and all rights against remaining defendants including ALLSTATE INSURANCE COMPANY as insurer of [the Richardsons] and as third-party defendants."
In June 2000, Rollins again amended her petition and alleged that Allstate failed to properly handle and defend the claims against the Richardsons and acted in bad faith. Rollins further alleged that the Richardsons assigned those claims to her.
Allstate answered Rollins' amended petition and asserted that there was no longer any coverage, because the Richardsons' policy only covers damages that an insured *1031 becomes "legally obligated to pay." Since the claims against the Richardsons were dismissed with prejudice, Allstate asserted that its indemnification obligation ended. Additionally, Allstate's answer included an exception of non-joinder of parties or no right of action, arguing that Rollins has no right of action to proceed solely against Allstate without the Richardsons under Section B of the Direct Action Statute, La. R.S. 22:655(B)(1).
Allstate's assertions were thereafter presented to the trial court through a motion for summary judgment and the exceptions of non-joinder of parties and res judicata. Allstate supported its motion with evidence of its policy and the March 10, 2000 assignment of rights and subrogation agreement between the Richardsons and Rollins. Additionally, Allstate asserted, and the other pleadings of both parties in the record indicate, that Allstate provided the Richardsons with defense counsel in these proceedings prior to the Richardsons' dismissal from the suit.
In opposition to Allstate's motion and exceptions, the only evidence Rollins offered was a letter agreement between Rollins' counsel and Reginald W. Abrams, the attorney hired by Allstate to represent the Richardsons. The March 6, 2000 letter discusses "the proposed terms of the settlement" between Rollins and the Richardsons. The terms included:
1. Plaintiffs agree to dismiss the claims against Mr. and Mrs. Richardson with prejudice, reserving rights against Allstate Insurance Company as insurer of Mr. and Mrs. Richardson.
2. Defendants, Johnny and Annie Richardson will transfer to plaintiffs any rights they may have against Allstate pursuant to the terms of the policy and the third party demand filed by the Richardsons against Allstate.
3. Johnny and Annie Richardson will agree not to keep any farm animals on their Property and will not keep any restaurant waste within twenty (20) feet of Plaintiff's residence.
* * * * * *
6. Reginald Abrams and the firm of Abrams and Lafargue will close their file on this matter, and not assist, formally or informally, Allstate or the City of Shreveport or the Parish of Caddo in the defense of plaintiff's claims, and said attorney file materials shall not be turned over to any remaining defendants or their attorneys.
Both attorneys signed the proposed settlement letter on March 6, 2000.
After hearing Allstate's motion for summary judgment, as well as its exceptions of non-joinder and res judicata, the trial court granted Allstate's motion for summary judgment in part and denied it in part. The trial court found that Rollins had no cause of action against Allstate under the terms of the Richardsons' homeowner's policy. The trial court based its ruling on Allstate's legal argument that the language of the policy covering the Richardsons only requires Allstate to pay for damages for which the Richardsons are found to be legally liable to pay. Since the Richardsons could not be found liable to pay any amount to Rollins, Allstate could not have any liability to Rollins and her daughter.
The trial court denied that portion of Allstate's motion for summary judgment regarding the claims that the Richardsons assigned to Rollins concerning Allstate's bad faith defense of the Richardsons. The court concluded that genuine issues of material fact exist. Also, the trial court denied Allstate's res judicata argument and its exception of non-joinder. The trial court ruled that the Direct Action Statute *1032 did not mandate dismissal of the insurer, even though Rollins dismissed the Richardsons with prejudice.
Allstate requested certification of the partial final judgment in their favor which was granted by the trial court. Rollins appealed the partial final judgment. Allstate answered the appeal, arguing that the trial court erred in failing to dismiss Rollins' claim regarding the Richardsons' assignment of the alleged bad faith handling of the claim and failure to investigate, and that the trial court erred in denying its exceptions for non-joinder and res judicata.[2]

Discussion

I.
Allstate relies on the policy condition of its insuring agreement which provides, as follows:
Subject to the terms, conditions and limitations of this policy, Allstate will pay damages which an insured person becomes legally obligated to pay because of bodily injury or property damage arising from an occurrence to which this policy applies, and covered by this part of the policy.
Allstate argues that the policy condition requiring the insured to become "legally obligated to pay" can now never occur because of Rollins' settlement with the Richardsons.
Additionally, we note the following language of the policy which further bears upon the policy condition raised by Allstate:
No suit or action can be brought against us under Coverage XFamily Liability Protection until the obligation of an insured person to pay is finally determined either by judgement against the insured person after actual trial, or by written agreement of the insured person, injured person, and us.
To the extent that this policy provision attempts to prevent a direct action against the insurer, it is clearly overridden by Louisiana's Direct Action Statute, La. R.S. 22:655, set forth below. Nevertheless, the provision's requirement for a judgment against the insured or mutual settlement by the insurer and insured further delineates the condition of the policy which Allstate raises in defense.
The issue regarding an insured's unilateral settlement with an alleged tortfeasor and without the participation of the insurer was considered by the Louisiana Supreme Court in Futch v. Fidelity & Casualty Company, 246 La. 688, 166 So.2d 274 (La. 1964). The plaintiffs in Futch reached a settlement with the allegedly negligent driver of a vehicle and the primary insurer of the vehicle. The settlement was made without prejudice to the plaintiffs' rights against the excess insurer (F & C) of the vehicle. Examining the intentions of the parties as reflected in the language of the settlement, the court ruled that the settlement was intended to relate only to the release of the primary insurer and did not pertain to either the excess insurer or to the driver's liability for damages in excess of the primary liability coverage. In reaching this decision, the supreme court, nevertheless, observed that a settlement effecting a total release or extinguishment of the insured's delictual obligation can release the insurance coverage altogether. The court stated:
It, of course, cannot be gainsaid that, if the legal obligation of F & C's insured to plaintiffs has been wholly extinguished by remission or release, F & C is not liable under its policy for its contract is *1033 to pay on behalf of its insured only when its insured is legally liable for damages.
Id. at 277. See also, Gasquet v. Commercial Union Insurance Co., 391 So.2d 466 (La.App. 4th Cir.1980), writ denied, 396 So.2d 921, 922 (La.1981), and cases reviewed therein.
Regarding a compromise or transaction under our law, Articles 3071 and 3073 of the Civil Code provide as follows:
La. C.C. art. 3071. Transaction or compromise, definition.
A transaction or compromise is an agreement between two or more persons, who, for preventing or putting an end to a lawsuit, adjust their differences by mutual consent, in the manner which they agree on, and which every one of them prefers to the hope of gaining, balanced by the danger of losing. This contract must be either reduced into writing or recited in open court and capable of being transcribed from the record of the proceeding. The agreement recited in open court confers upon each of them the right of judicially enforcing its performance, although its substance may thereafter be written in a more convenient form.
La. C.C. art. 3073. Scope of transaction.
Transactions regulate only the differences which appear clearly to be comprehended in them by the intention of the parties, whether it be explained in a general or particular manner, unless it be the necessary consequence of what is expressed; and they do not extend to differences which the parties never intended to include in them.
The renunciation, which is made therein to all rights, claims and pretensions, extends only to what relates to the differences on which the transaction arises.
From our review of the jurisprudence and these code articles, we find that the intent of the parties to a settlement or compromise between a plaintiff and an insured tortfeasor must be examined to determine whether the tortfeasor's delictual obligation to which the insurance coverage applies has been released. In this case, the documentation presented as evidence for the motion for summary judgment demonstrates that the Richardsons' alleged delictual obligation to the plaintiffs was extinguished by the compromise, and they were completely released from the lawsuit. To the extent that the parties intended to limit their transaction or compromise only to that portion of Rollins' damages which might extend beyond the Allstate coverage, the language of the settlement documents does not reflect an attempt to limit damages exceeding insurance coverage. Therefore, Rollins was required to counter Allstate's motion for summary judgment by demonstrating extrinsic evidence sufficient to present a genuine issue of material fact regarding an intent between herself and the Richardsons that would limit their compromise to those potential damages in excess of the Allstate coverage.
We find no such fact issue in this case. Instead, the settlement documents and the dispute between Allstate and the Richardsons regarding coverage support the view that the Richardsons sought and received a total release of all claims by Rollins regarding the alleged liability stemming from the condition of the Richardsons' property. Allstate's policy expressly provides that its obligation of indemnification results from the Richardsons becoming "legally obligated to pay" for bodily injury. A trial solely against Allstate could result in an abstract determination that the Richardsons were negligent, but not in a judgment causing the Richardsons to "become legally obligated to pay" Rollins. Accordingly, we agree with the trial court that Allstate has shown that the Richardsons were released from the entirety of the *1034 claim against them as tortfeasors, and that the condition giving rise to Allstate's obligation for indemnity under the policy cannot occur.
Before we may conclude, as the trial court did, that Allstate owes no obligation under its policy, we must examine whether the policy condition that the insured "become legally obligated to pay" is contrary to the public policy and purpose of the Direct Action Statute (the "Statute"). The Statute, La. R.S. 22:655, provides in pertinent part, as follows:
* * * * * *
(B)(1) The injured person or his or her survivors or heirs mentioned in Subsection A, at their option, shall have a right of direct action against the insurer within the terms and limits of the policy; and, such action may be brought against the insurer alone, or against both the insured and insurer jointly and in solido, in the parish in which the accident or injury occurred or in the parish in which an action could be brought against either the insured or the insurer under the general rules of venue prescribed by Code of Civil Procedure Art. 42 only. However, such action may be brought against the insurer alone only when:
(a) The insured has been adjudged a bankrupt by a court of competent jurisdiction or when proceedings to adjudge an insured a bankrupt have been commenced before a court of competent jurisdiction;
(b) The insured is insolvent;
(c) Service of citation or other process cannot be made on the insured;
(d) When the cause of action is for damages as a result of an offense or quasi-offense between children and their parents or between married persons;
(e) When the insurer is an uninsured motorist carrier; or
(f) The insured is deceased.
* * * * * *
(C) It is the intent of this Section that any action brought under the provisions of this Section shall be subject to all of the lawful conditions of the policy or contract and the defenses which could be urged by the insurer to a direct action brought by the insured, provided the terms and conditions of such policy or contract are not in violation of the laws of this state.
(D) It is also the intent of this Section that all liability policies within their terms and limits are executed for the benefit of all injured persons and their survivors or heirs to whom the insured is liable; and, that it is the purpose of all liability policies to give protection and coverage to all insureds, whether they are named insured or additional insureds under the omnibus clause, for any legal liability said insured may have as or for a tortfeasor within the terms and limits of said policy.
While multiple references are made in the Statute respecting the "terms," "limits," and "conditions" of the contract of insurance, those provisions may not be enforced if they are "in violation of the laws of this State." Such a violation may occur if the broad public policy of the Direct Action Statute providing protection to injured persons is thwarted by a condition in the contract of insurance.
In a significant early case interpreting the Direct Action Statute, the court in U-Drive-It Car Company, Inc. v. Freidman, 153 So. 500 (La.App.Orl.1934), did not allow the insurer to deny coverage after the insured ("assured") admitted that he was solely to blame for an automobile accident. The insurer raised as its defense the policy provisions requiring the insured to cooperate with the insurer and to "not voluntarily assume any liability." The court held:
Since, under Act No. 55 of 1930, there is created in an injured party a right of direct action against the insurer of the *1035 party responsible for the damage, then the enforcement of the policy provision requiring the cooperation of the insured and prohibiting the assumption by the insured of liability automatically and without any action on the part of the injured party deprives him of that right. It would seem that, if the interpretation placed upon the statute and upon the policy provision by defendant is the proper one, then the statute gives the right, but the policy permits the destruction of it without any action by the third person to whom the statute gives it. It is argued that, even though this be true, nevertheless there is nothing illegal in the policy requirement that there be no assumption of liability and that there be cooperation by the assured, and it is further argued that, if the said requirement be legal, it is not repugnant to Act No. 55 of 1930, because that statute expressly provides "that nothing contained in this act shall be construed to affect the provisions of the policy contract if the same are not in violation of the laws of this State." Section 2. Our view is that the policy provision in question could not be permitted to deprive a third person, who is injured or who sustained loss, of the right which the statute gives to proceed directly against the insurer or the assured or both, and that it is intended to deprive only the assured of his protection in the event that he fails to cooperate or in the event he assumes liability or jeopardizes the rights of the insurer. In other words, if the assured admits fault and agrees to assume liability, then he, if he is required to make payment to the injured party, cannot claim reimbursement from his insurer. If, however, the injured party makes claim directly against the insurer, his right to recover cannot be defeated by the admissions or assumptions of the assured and to which he, the injured person, is not a party.
Id. at 502.
In the present case, unlike U-Drive-It, the insurer does not assert the end of coverage because of a breach of a policy provision by the insured. The disputed compromise was an action by both the insured and the injured person. The action in compromise was not a voluntary admission of liability by the Richardsons whereby they remained exposed for becoming legally liable to Rollins. The compromise extinguished the alleged delictual obligation of the Richardsons without any remaining potential for them to become "legally obligated to pay." Under these circumstances, Rollins' right of direct action, which is supported by strong public policy, can hardly be said to have been defeated by a policy provision which ended coverage only after her action in compromise with the alleged tortfeasor.
In considering the importance of this Allstate policy provision, we note that the Direct Action Statute itself places limits upon a direct action suit brought solely against the insurer and not against both insurer and insured. The limitations articulated in Section B(1)(a)-(f) involve situations where the insured is not amenable to suit for some reason. Compromise is not one of those reasons. Thus, by indicating that the direct action should not be brought against the insurer alone when the insured/tortfeasor is available for suit, the statute recognizes the insurer's role as indemnifier, which remains contingent upon the insured becoming legally liable.[3]
*1036 Accordingly, we do not find that the condition in the Allstate policy, which has now become impossible by the action of Rollins, violates the broad public policy of the Direct Action Statute. The statement in the Futch ruling, quoted above, was expressed at a time when the Direct Action Statute and its public policy had become firmly entrenched in our law. Although the statement was dicta to the ultimate holding in Futch, our highest court did not recognize the contingent relationship of indemnity established under the policy of insurance as repugnant to the purposes of the Direct Action Statute.
In reaching this conclusion, we further reject Rollins' argument based upon the discussion of solidary liability, in Mallet v. Credo Oil & Gas, Inc., 534 So.2d 126 (La. App. 3d Cir.1988), writ denied, 536 So.2d 1237 (La.1989). In Mallet, the insured/tortfeasor was dismissed from the suit because of bankruptcy, with the plaintiff reserving all rights against Canal Insurance Company and "any other parties who may be made defendants herein." The plaintiff later determined that Rockwood Insurance Company was also an insurer of the bankrupt defendant, and Rockwood was added to the suit. Both Canal and Rockwood were dismissed by the trial court on exceptions of no cause of action and the court of appeal reversed. The court ruled:
As insurers, both Canal and Rockwood are solidary obligors with the insured, Gary Oil Co. Pearson v. Hartford Accident & Indemnity Co., 281 So.2d 724 (La.1973). We note that although Canal and Rockwood are solidarily liable with Gary Oil Co., they are not solidarily bound to each other. See Lipps v. Bernstein, 508 So.2d 178 (La.App. 4th Cir.), reversed in part on other grounds, 512 So.2d 426 (La.1987). Mallet specifically reserved rights against Canal "and any other parties who may be made defendants." Formerly, under La. C.C. art. 2203, such a reservation of rights was required to proceed against a defendant who was solidarily liable with the released party. Sampay v. Morton Salt Co., 395 So.2d 326 (La.1981). This requirement has been legislatively abolished. La. C.C. art. 1803; Weber v. Charity Hospital of Louisiana, 475 So.2d 1047 (La.1985). Under both the old Article 2203 and the present Article 1803, Mallet's rights against Canal and Rockwood would be protected.
Id. at 128.
After quoting from the order of dismissal in the record dismissing the bankrupt company, the court ruled:
We do not find this dismissal "with prejudice" to be fatal to plaintiff's claims against Canal and Rockwood as insurers of Gary Oil Co. We agree with Canal and Rockwood that they cannot be independently liable without Gary Oil Co. first being found liable. We also agree that the dismissal with prejudice of Gary Oil Co. terminates plaintiff's rights against it. However, we do not agree with Canal and Rockwood's contention that plaintiff may not pursue his claim against them. Plaintiff's intention in releasing Gary Oil Co. was made clear. *1037 He intended to release it due to its financial problems.
Id. at 129-130.
Our review of the Mallet opinion leads us to conclude that its rejection of the exceptions of no cause of action was correct. The plaintiff's dismissal of the bankrupt insured may well have been intended only as a response to the jurisdiction and control of the bankruptcy court over the bankrupt's estate. The extinguishment of the insured tortfeasor's obligation to the plaintiff was certainly not shown to be intended under those circumstances and could not be decided upon the exception of no cause of action.
Nevertheless, Rollins argues that Mallet's discussion of the solidary relationship between the insured and the insurer pursuant to the Direct Action Statute is authority for her position that a complete extinguishment of the insured's delictual obligation by compromise has no effect upon the solidary insurer's coverage. We disagree.
The Direct Action Statute's statement that solidary liability exists for the insured and the insurer must be considered in view of the Civil Code articles defining solidary obligations. An obligation is solidary for the obligors when each obligor is liable for the whole performance. La. C.C. art. 1794. An obligation may be solidary though it derives from a different source for each obligor. La. C.C. art. 1797. Additionally, the jurisprudence has noted that two obligors/defendants may be solidarily liable for those damages for which a plaintiff can compel either to pay, even though other elements of damages may be recoverable only against one of the defendants. Weber v. Charity Hospital of Louisiana at New Orleans, 475 So.2d 1047 (La.1985). The source of the insured's obligation to the injured plaintiff is a delictual obligation arising from the insured's negligence. The source of the insurer's obligation to the injured plaintiff is the contract of insurance. The insured's obligation is solidary with the insurer for those damages within the coverage limits of the policy, while there is no solidary liability for the portion of the damages in excess of the coverage.
While recognizing the solidary obligations of the insured and insurer and providing a direct action against the insurer, the Direct Action Statute, as quoted above, also acknowledges that the terms and limits of the policy of insurance determine the insurer's obligation. That obligation under the Allstate policy is conditioned upon the Richardsons becoming "legally obligated to pay" Rollins, a condition which can never occur in view of the parties' compromise and extinguishment of the Richardsons' tort obligation. Cf., La. C.C. art. 1798.
Finally, we do not find Civil Code Article 1803 dispositive of the issue addressed in Mallet and presented herein. The article provides as a general rule of the law of solidary obligations that a "compromise between the obligee and one obligor, benefits the other solidary obligors in the amount of the portion of that [the released] obligor." In this case, where the source of the insurer's obligation to pay is a contract which makes the obligation contingent upon the insured's tort obligation being determined and becoming due, a compromise which results in the complete extinguishment of the insured's obligation likewise ends the insurer's obligation. The above quoted statement by our highest court in Futch recognizes that the insurer's obligation "is to pay on behalf of its insured only when its insured is legally liable for damages."
While we read the Mallet ruling as following the Futch analysis to search for the intent of a limited release of the insured, we do not agree with any implication of *1038 Mallet as now urged by Rollins that, based upon the application of Civil Code article 1803 alone, a total extinguishment of the insured's delictual obligation by compromise allows a plaintiff to proceed solely against the insurer.

II.
Allstate was not totally dismissed from this suit because the trial court found genuine issues of material fact regarding the claims that the Richardsons assigned to Rollins concerning Allstate's bad faith defense of the Richardsons. Allstate's answer to the appeal asserts that the trial court erred.
It is well settled law that the insurer's obligation to defend suits against its insured is generally broader than its liability for damage claims. American Home Assurance Co. v. Czarniecki, 255 La. 251, 230 So.2d 253 (La.1969); Steptore v. Masco Const. Co., Inc., 93-2064 (La.8/18/94), 643 So.2d 1213; Yarbrough v. Federal Land Bank of Jackson, 31,815, p. 5 (La.App.2d Cir.3/31/99), 731 So.2d 482, 486. The insured need not prove the outcome of the suit will necessarily impose liability for plaintiff's claims. Rather, the duty to defend arises whenever the pleadings against the insured disclose even a possibility of liability under the policy. Steptore, supra; Yarbrough, supra. In this case, the record is clear that Allstate provided an attorney to defend the Richardsons, despite the coverage defense it raised. No claim regarding Allstate's duty to defend could therefore have been assigned to Rollins.
Additionally, the law recognizes that the insurer's obligation to exercise good faith in defending the insured also includes a duty to settle within policy limits if necessary to protect the insured's financial interests against excess damages beyond the insurance coverage. Keith v. Comco Insurance Co., 574 So.2d 1270 (La. App. 2d Cir.), writ denied, 577 So.2d 16 (La.1991). In the Keith case, the insured was found liable in the initial lawsuit for damages in excess of the coverage provided by his insurer, Comco, despite numerous opportunities by Comco to settle the claim for just a fraction of the coverage limit of the policy. Following the judgment against the insured, Keith assigned to the plaintiff his claim against Comco for its bad faith refusal to settle, and the plaintiff brought a second suit against Comco. Noting that the initial tort action involved a claim of strict liability against Comco's insured, with no issue of causation, and with competent medical findings of the injury, this court affirmed an award against Comco for its bad faith refusal to settle the claim, and for Comco's failure to avoid the excess financial burden to the insured.
Rollins now claims to be the assignee of the Richardsons' claim against Allstate for bad faith failure to settle. Nevertheless, Rollins presented no evidence in opposition to Allstate's motion for summary judgment to suggest that this claim might ever be established. The record here is silent regarding the amount of damages suffered by Rollins and her daughter so as to demonstrate that the possibility of an excess judgment against the Richardsons ever existed. With the coverage dispute, we recognize that Allstate probably never sought settlement. Nevertheless, Rollins has not shown that Allstate's defense under its Pollution Exclusion was frivolous or that it ever received an offer to settle. Most significantly, unlike the tortfeasor in Keith, who was adjudicated to be negligent by the court, the Richardsons will never be adjudicated as negligent in this case so as to expose them to damages in excess of the Allstate coverage.
Accordingly, we find that, in response to Allstate's motion for summary judgment, Rollins has not demonstrated that *1039 she will be able to bear her burden of proof regarding any claim assigned to her by the Richardsons against Allstate for its bad faith failure to defend or bad faith failure to settle this matter. La. C.C.P. art. 966(C)(2). The ruling of the trial court denying Allstate's motion for summary judgment on this issue is reversed.

Conclusion
For the foregoing reasons, we affirm the trial court's dismissal of Rollins' claim against Allstate for coverage under the insurance policy. The trial court's ruling denying Allstate's motion for summary judgment regarding Rollins' claim for bad faith failure to defend or settle on behalf of its insureds is reversed, and Allstate is dismissed from this action. Costs are assessed to appellant.
AFFIRMED IN PART, REVERSED AND RENDERED IN PART.

APPLICATION FOR REHEARING
Before NORRIS, C.J., BROWN, STEWART, GASKINS, and CARAWAY, JJ.
Rehearing denied.
NOTES
[1] The City of Shreveport was also a named defendant in Rollins' Original Petition for Damages, as well as her First Supplemental and Amended Petition.
[2] In response to a writ application by Allstate raising these issues, we directed Allstate to answer Rollins' appeal so that all rulings of the trial court could be considered together.
[3] Allstate argues that the minutes of the committee hearing for Senate Bill 678 of 1988 which led to the addition of Section B(1)(a)-(f) reflect a legislative intent to permit the trier of fact to see the conflict between the plaintiff and insured/tortfeasor and not just between the plaintiff and an insurance company. While we choose not to discern the legislative intent, such purpose is a legitimate contractual concern which the insurer no doubt intends to resolve with the policy condition which is now in dispute. If the policy condition is in violation of the Direct Action Statute, a contention which we now reject, a nominal compromise and dismissal of the insured in any suit where the damages are within the coverage limits would leave the direct action pending solely against the insurer contrary to the implication of Section B(1)(a)-(f).