WILLIAMS, J.
11 State Farm Automobile Insurance Company (“State Farm”) appeals a trial court’s judgment denying its subrogation claim against Safeway Insurance Company (“Safeway”). For the following reasons, we reverse the judgment of the trial court and remand this matter for further proceedings consistent with this opinion.
DISCUSSION
The facts of this case are not in dispute. On August 24, 2012, defendant, Kenneth White, borrowed a 2002 Yukon XL sports utility vehicle from his mother, Loret Howard, to drive from Monroe to Shreveport. White’s own vehicle was disabled because it was not running properly. While en route to Shreveport, White rear-ended a vehicle driven by plaintiff, Danny Litton. Plaintiff sustained bodily injuries from this accident.
White and his wife, Chiquita White, owned a 1999 Pontiac Grand AM, which was insured by Safeway. The vehicles owned by Litton and Howard were insured by State Farm. White did not live with Howard and was not listed as an insured under her automobile policy.
On December 14, 2012, plaintiff filed a lawsuit alleging injuries and property damage. He named White, State Farm and Safeway as defendants. State Farm filed a cross claim against Safeway, seeking reimbursement for monies paid pursuant to its policy. State Farm alleged that White borrowed the vehicle from his mother because his vehicle “had mechanical problems which caused it to not run properly.” It argued that the vehicle White borrowed was a “temporary substitute vehicle” pursuant to LSA-R.S. 1222:1296, and Safeway, as White’s insurer, was the primary insurer for the damages sustained by plaintiff.[1] Conversely, Safeway argued that, under the terms of its policy, coverage for the vehicle White borrowed from his mother was secondary to the State Farm policy. Subsequently, both insurers moved for summary judgment; both motions were denied.
Following a trial on the merits, the trial court denied State Farm’s claim and dismissed the matter. In its oral reasons for judgment, the court stated:
The only vehicle that was listed on the policy issued by Safeway was the 1999 Pontiac Grand Am which was owned by a Chiquita White. And they are — and Safeway has argued that this does not qualify as a temporary substitute vehicle on — under the policy.
[[Image here]]
If I take the contract interpretation in the clearest meaning possible[,] it means: ‘any private passenger, utility, or farm automobile not owned by the named insured.’ Which was not owned by the named insured in this case. ‘Or any resident of the same household while temporarily used as a substitute.’ Which I believe it was temporarily used as a substitute for the owned automobile. When the owned automobile’— and this is the distinguishing factor — ‘is being serviced or repaired by a person engaged in the business of selling, repairing, or servicing motor vehicles.’ In this situation, I understand that this was a substitute vehicle. I understand that it was being used but the other vehicle!,] as I understand!,] was disabled. It was not being serviced or repaired at the present time. Looking at the contract interpretation!,] based on that!,] I believe 'that Safeway — Safeway’s policy *822 controls and it was not a substitute vehicle in this situation because it was not being serviced or repaired. So, I have to rule in favor of Safeway.
State Farm appeals.
J^DISCUSSION
The sole issue in this appeal is whether the definition of “temporary substitute automobile” set forth in the Safeway policy violates statutory provisions and the legislature’s intent in enacting the provisions pertaining to temporary and substitute vehicles. State Farm contends the trial court erred in concluding that its policy provided primary coverage for the accident. It argues that Safeway has narrowly. tailored the language in its policy to avoid providing coverage. State Farm further argues that “Safeway has attempted to create a definition that severely limits its exposure to a temporary substitute vehicle scenario.”
An insurance policy is a contract between the insured and insurer and has the effect of law between them. See LSA-C.C. arts. 1906 and 1983; Gorman v. City of Opelousas, 2013-1734 (La.7/1/14), 148 So.3d 888; Peterson v. Schimek, 98-1712 (La.3/2/99), 729 So.2d 1024. Interpretation of a contract is the determination of the common intent of the parties. LSA-C.C. art. 2045. The role of the judiciary in interpreting an insurance contract is to ascertain the common intent of the insured and insurer as reflected by the words in the policy. Gorman, supra; Peterson, supra.
If the insurance policy’s language clearly expresses the parties’ intent and does not violate a statute or public policy, the policy must be enforced as written. However, if the insurance policy is susceptible to two or more reasonable interpretations, then it is considered ambiguous and must be liberally interpreted in favor of coverage. Supreme Services & Specialty Co., Inc. v. Sonny Greer, Inc., 2006-1827 (La.5/22/07), 958 So.2d 634; Reynolds v. Select Properties, Ltd., 93-1480 (La.4/11/94), 634 So.2d 1180.
An insurance policy issued in Louisiana is considered to contain all the provisions required by statute. Marcus v. Hanover Ins. Co., 98-2040 (La.6/4/99), 740 So.2d 603; Simms v. Butler, 97-0416 (La.12/2/97), 702 So.2d 686. Any policy provision that narrows or restricts statutorily-mandated coverage will not be enforced. Marcus, supra; Block v. Reliance Ins. Co., 433 So.2d 1040 (La.1983). An insurer is not at liberty to limit its liability and impose conditions upon its obligations that conflict with statutory law or public policy. Id.
LSA-R.S. 22:1296(A), the statute applicable to temporary borrowed vehicles and rental vehicles, provides:
Every approved insurance company, reciprocal or exchange, writing automobile liability, physical damage, or collision insurance, shall extend to temporary substitute motor vehicles as defined in the applicable insurance policy and rental motor vehicles any and all such insurance coverage in effect in the original policy or policies. Where an insured has coverage on a single or multiple vehicles, at least one of which has comprehensive and collision or liability insurance coverage, those coverages shall apply to the temporary substitute motor vehicle, as defined in the applicable insurance policy, or rental motor vehicle. Such insurance shall be primary. However, if other automobile insurance coverage or financial responsibility protection is purchased by the insured for the temporary substitute or rental motor vehicle, that coverage shall become primary[.] *823 In the instant case, the Safeway policy provides as follows:
* * *
Definitions. Under Part I:
[[Image here]]
“owned automobile” means:
[[Image here]]
1 K(c) a temporary substitute automobile:
“temporary substitute automobile” means any private passenger, utility or farm automobile, not owned by the named insured or any resident of the same household, while temporarily used as a substitute for the owned automobile when the owned automobile is being serviced or repaired by a person engaged in the business of selling, repairing or servicing motor vehicles.
[[Image here]]
In State Farm Mut. Auto. Ins. Co. v. U.S. Agencies, LLC, 2005-0728 (La.App. 1st Cir. 3/24/06), 934 So.2d 745, the defendant insurer, U.S. Agencies, argued that LSA-R.S. 22:681, the predecessor to 22:1296, only required the extension of coverage to “temporary substitute vehicles as defined in the applicable insurance policy.” According to U.S. Agencies, the statute did not apply because its policy did not define the term “temporary substitute vehicle.” The court examined the legislative intent with regard to LSA-R.S. 22:681, stating:
We have consulted the minutes and audio-recording of the House Commerce Committee meeting, as well as the minutes of the Senate Commerce Committee meeting, wherein the proposed legislation was debated. It is clear that the legislative intent behind LSA-R.S. 22:681 was to require the extension of all insurance coverage an individual possesses on his own vehicle to the use of a rental vehicle or a temporary substitute vehicle.
The minutes and the audio-recording of the House Commerce Committee meeting held on June 7, 1989, reflect that Representative Stelly presented House Bill No. 1042 (subsequently enacted as 1989 La. Acts No. 438) to provide for the extension of an individual’s insurance coverage to his use of a temporary substitute vehicle. Committee chairman, Representative Ensminger, questioned whether the language “temporary substitute vehicle” should be replaced with the term “rental vehicles” because it was the extension of coverage to “rental vehicles” that Representative Stelly was attempting to address. However, this suggested substitution was rejected, and all committee members [ ^ultimately approved an amendment to add the term “rental vehicles” after “temporary substitute vehicles.” Thus, the proposed legislation would require the extension of coverage to both “rental vehicles” and non-rented “temporary substitute vehicles.”
(Emphasis in original). The court concluded that “it was not the intention of the legislature to allow an insurer to merely opt out of the mandates of LSA-R.S. 22:681 by not including the definition of ‘temporary substitute vehicles’ in its policies.” Id., at 749.
Unlike the policy in State Farm v. U.S. Agencies, supra, the Safeway policy at issue in the instant case does contain a definition of “temporary substitute automobile.” However, under Safeway’s definition, coverage extends only to a vehicle “temporarily used as a substitute for the owned automobile when the owned automobile is being serviced or repaired by a person engaged in the business of selling, repairing or servicing motor vehicles.” It is undisputed that, at the time of the acci *824 dent, White’s vehicle was not “being serviced or repaired.”
Pursuant to the express language set forth in LSA-R.S. 22:1296(A), the legislature mandated that coverage be extended to “temporary substitute vehicles.” The legislature also mandated that “[s]uch coverage shall be primary.” However, under the language of the Safeway policy, coverage is extended to a temporary or substitute vehicle only “when the owned automobile is being serviced or repaired by a person engaged in the business of selling, repairing or servicing motor vehicles.”
We find that the provision in the policy, pertaining to temporary substitute vehicles, impermissibly narrows or restricts insurance coverage |7mandated by LSA-R.S. 22:1296(A). The provision requires the owned vehicle to be in the process of “being serviced or repaired by a person engaged in the business of selling, repairing or servicing motor vehicles.” There are many instances in which an insured may borrow or rent a vehicle while the owned vehicle is not in the process of being serviced or repaired. In the instant case, White testified that he .needed to drive to Shreveport. However, the day before his trip, he learned that his vehicle was experiencing some mechanical difficulties. Rather than taking his vehicle to a repair shop first, White simply borrowed a vehicle from his mother.
A provision, such as the one set forth in the Safeway policy, will never extend coverage to vehicles in situations where the owner may not be in a position to have the vehicle repaired at that time, or to an owner who may prefer to perform the repairs himself. Consequently, the provision violates Louisiana’s public policy of requiring insurance coverage to be extended to temporary substitute vehicles pursuant to LSA-R.S. 22:1296. Therefore, the trial court’s denial of State Farm’s subro-gation claim is reversed.
CONCLUSION
For the foregoing reasons, we reverse the judgment of the trial court insofar as it dismissed the subrogation claims alleged by State Farm. We remand the case to the trial court for further proceedings consistent with this opinion. Cost of this appeal is assessed to Safeway Insurance Company.
REVERSED AND REMANDED.
APPLICATION FOR REHEARING
Before BROWN, WILLIAMS, CARAWAY, PITMAN, and GARRETT, JJ.
Rehearing denied.

. Plaintiff’s claims against defendants were later dismissed due to a settlement/compromise. However, State Farm reserved its right against Safeway pursuant to its cross claim.