Judgment rendered June 26, 2024
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 55,656-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

BILLY RAY HODGE                                          Plaintiff-Appellee

versus

LOUISIANA FARM BUREAU                          Defendants
MUTUAL INSURANCE
COMPANY, XYZ INSURANCE
COMPANY, NICOLAS HOPKINS

* * * * *

Appealed from the
Sixth Judicial District Court for the
Parish of Madison, Louisiana
Trial Court No. 201948

Honorable Laurie Reis Brister, Judge

* * * * *

| | |
|---|---|
| PETTIETTE, ARMAND, DUNKELMAN, WOODLEY, BYRD & CROMWELL, LLP<br>By: S. Michael Cooper | Counsel for Defendant-Appellant, Louisiana Farm Bureau Casualty Insurance Company |
| HUDSON, POTTS & BERNSTEIN, LLP<br>By: Morgan Livingston<br>Brian P. Bowes | Counsel for Appellee |

* * * * *

Before PITMAN, STONE, THOMPSON,
HUNTER, and MARCOTTE, JJ.


STONE J., concurs and dissents in part for reasons assigned by J. HUNTER

HUNTER, J., concurring in part and dissenting in part with written reasons.

**MARCOTTE, J.**

This appeal arises from the Sixth Judicial District Court, Parish of Madison, the Honorable Laurie R. Brister presiding. Appellant-Defendant, Louisiana Farm Bureau Mutual Insurance Company, appeals the trial court's ruling awarding $76,366.36 to plaintiff-appellee, Billy Ray Hodge, for damages to farm irrigation equipment caused by Hodge's employee. For the following reasons, we reverse in part and affirm in part.

## FACTS

On March 20, 2019, Billy Ray Hodge ("Hodge") filed a petition for damages naming as defendants Louisiana Farm Bureau Mutual Insurance Company ("Farm Bureau"), Nicholas Hopkins ("Hopkins"), a Farm Bureau adjuster, and XYZ Insurance Company, thought to be the errors and omissions insurer for Hopkins. The petition alleged that Hodge was covered by a liability insurance policy issued by Farm Bureau and that on August 25, 2018, Hodge's employee Don Davis negligently drove one of Hodge's tractors[1] into a pivot irrigation system[2] owned by Sherman Shaw on Shaw's 1,200-acre agricultural property in Madison Parish known as Tamarak Farm ("Tamarak").

The petition alleged that Hodge leased Tamarak from Shaw, but there was no lease agreement between Hodge and Shaw with respect to the pivot system. Hodge and Shaw had a business relationship whereby Hodge farmed Shaw's land under a verbal lease and paid Shaw a percentage of

---

[1]     Farm Bureau paid for damage to the tractor under a separate policy, and the parties stipulated that it was not at issue in this case.

[2]     A pivot irrigation system is a rotating machine that waters crops using sprinklers. The irrigation method is highly efficient and irrigates crops in a circular area around the system's pivot point.

revenue from crop yields. Hodge would, with Shaw's permission, utilize the pivot irrigation system in order to increase crop yield and, in turn, the amount paid to Shaw.

The petition stated that the irrigation system was extensively damaged in the accident and had to be replaced. Even though Shaw owned the pivot system, he did not assert a first-party insurance claim with his own insurer, nor did he assert a third-party claim against Hodge or Farm Bureau. After the accident, the petition alleged that Hodge immediately informed Farm Bureau, who then sent adjuster Hopkins to assess the damage. Present at the inspection were Hopkins, Hodge, and Dennis Buza, a sales representative for Chicot Irrigation, Inc., which repairs and sells pivot irrigation systems. Hopkins assessed the damage at $76,000 to repair the pivot system and $160,000 to replace it.

Hodge then asserted that on a subsequent visit to Tamarak, Hopkins told him that he would be covered for the entire cost to repair the system plus "as much as you need." Hodge claimed that only after he ordered and had installed the replacement pivot irrigation system did Farm Bureau inform him that coverage was being denied due to an exclusion for damaged property rented, occupied, and/or loaned to him. This resulted in Hodge paying $35,750 to Shaw and $83,525.59 to Chicot Irrigation, Inc. for a new pivot irrigation system, with Shaw covering the balance.

The petition stated a claim against Farm Bureau and Hopkins under a theory of detrimental reliance. In support of his detrimental reliance claim, Hodge argued that he justifiably relied on Farm Bureau's statements (through Hopkins) that he was covered and that these statements induced

2

him to order the replacement pivot irrigation system, ultimately to his detriment.

The petition also stated a claim against Farm Bureau for a breach of its duty of good faith. Hodge claimed that because he did not rent or occupy the pivot irrigation system, nor was it loaned to him, Farm Bureau's denial of coverage was an act of arbitrary and capricious bad faith in violation of La. R.S. 22:1973 and 1892. The petition sought reimbursement of the purchase price of the new irrigation system, penalties, and attorney fees, due to the wrongful denial of coverage, and damages for Hodge's detrimental reliance on Farm Bureau's representations.

Farm Bureau filed an answer to Hodge's petition on May 2, 2019. Farm Bureau generally denied the allegations in Hodge's petition and asserted several affirmative defenses, including a claim that no coverage was available to Hodge for the damaged irrigation system because it was property that was rented, occupied, and/or loaned to him. Farm Bureau also asserted that no coverage was available to Hodge because of the policy's voluntary payments exclusion, which stated that no coverage was available to any insured for payments made or obligations incurred without Farm Bureau's consent.

On March 9, 2020, Farm Bureau filed a motion for summary judgment, arguing that the damage to property exclusion was enforceable and that the alleged statements by Hopkins did not create coverage. Farm Bureau also argued that the pivot system was a component part of Tamarak, thus Hodge's lease of Tamarak included the pivot. Farm Bureau noted that the center tower of the pivot was bolted to a concrete pad and that the system

3

did not work unless bolted to the ground. Farm Bureau also argued that the system was connected to a well by pipes, further evidencing that the system was a component part of an immovable.

Hodge opposed the motion, arguing that Farm Bureau relied on a flawed interpretation of the coverage exclusions in the policy and that, in any event, he never owned, rented, or occupied the pivot system, nor was it ever loaned to him. Hodge also argued that the concrete slab and well were separate structures that did not make up the pivot system and should not have been considered when determining if the pivot system was movable or immovable. Hodge asserted that at the very least there remained genuine issues of material fact.

The trial court agreed, and it denied Farm Bureau's motion for summary judgment after a hearing on December 1, 2020. The trial court found that there were genuine issues of material fact with respect to whether Hodge owned, leased, rented, or operated the pivot system and whether the pivot system was a component part of the land that Hodge leased.

On July 19, 2022, Hodge dismissed Hopkins and XYZ Insurance Company from the lawsuit. On May 23, 2023, a bench trial was held against Farm Bureau. On May 30, 2023, the trial court provided its reasons for ruling in favor of Hodge. The trial court held that Hodge did not own, rent, or lease the pivot irrigation system, nor did he have care, custody, or control of it. The trial court also held that the policy's exclusions could not unambiguously be applied to Hodge's claim and that there was insurance coverage. The trial court also found that the pivot system was not a component part of the land, noting that the well and concrete slab were

4

separate from the pivot system, which was designed to move. Finally, the trial court denied Hodge's claims for detrimental reliance and bad faith penalties.

On June 14, 2023, the trial court signed a judgment in favor of Hodge and against Farm Bureau for damages to the pivot system in the amount of $76,366.36, plus costs and interest. Farm Bureau appeals, and Hodge answered the appeal.

## DISCUSSION

Farm Bureau argues that this court should apply a *de novo* standard of review since the case involves competing interpretations of an insurance contract. As to the merits, Farm Bureau asserts that the trial court erred by not enforcing the policy's "damages to property" exclusion. In support of this assertion, Farm Bureau notes that the purpose of the owned, rented, leased, or occupied exclusion is to effectuate the intent that liability insurance is designed to provide compensation for damages to property not owned or controlled by the insured. Farm Bureau further notes that the exclusion is applicable because there may be some advantage to the insured in falsifying or exaggerating a loss to its own property – a moral hazard not contemplated or contracted for in a commercial general liability policy.

Farm Bureau argues that the trial court should have found applicable the coverage exclusion for property rented, occupied, or loaned to Hodge. Farm Bureau notes that under Hodge's deal with Shaw, Shaw agreed to erect the pivot, which was used by Hodge in his farming operation, and Hodge agreed to pay Shaw a percentage of crop revenue. Both Hodge and Shaw testified that this arrangement made them more money. Farm Bureau argues

5

that since Hodge got to use the pivot, and in turn paid Shaw more money than he had previously, Hodge was effectively "renting" the pivot from Shaw, or at the very least, the pivot was loaned to Hodge.

Farm Bureau further argues that Hodge's lease of the Tamarack farmland necessarily included the pivot since it was a component part of the farm and, under Louisiana law, tracts of land and their component parts are immovable property. Farm Bureau notes that the pivot was fixed to the land with bolts for over ten years, that it spanned 1,930 feet with tires four feet high, and that it was connected to a well by pipes. Farm Bureau also supports its arguments with cases from jurisdictions outside Louisiana which hold that pivot irrigation systems are fixtures to the land. Farm Bureau further argues that even if the court considers the pivot system to be a movable, it was still "loaned" to Hodge in the sense that it was a nonconsumable thing delivered by Shaw to Hodge to use and return.

Assuming the pivot is movable property, Farm Bureau further argues that coverage is excluded because the pivot was under the care, custody, or control of Hodge, and the policy excludes coverage for "personal property in the care, custody or control of any 'insured' other than your employee." Farm Bureau notes that during the pivot's entire lifespan (2007-2018), Hodge was the only one who turned it on or off, put air in its tires and diesel and oil in its engine, winterized it, and built bridges for its wheels. In other words, Farm Bureau asserts that Hodge treated the pivot system as if it were his own; therefore, coverage should be excluded.

Farm Bureau also argues that Hodge's actions thwarted its right to defend Hodge against a claim for the damaged pivot. Farm Bureau asserts

that when Hodge unilaterally purchased a brand new pivot system, he never gave Farm Bureau the opportunity to investigate a potential defense that Shaw could have been partially at fault. Accordingly, Farm Bureau argues that the trial court was wrong to assume that Hodge triggered the insuring agreement.

Finally, Farm Bureau argues that coverage should be excluded due to the voluntary payments provision in the policy, which states that "no 'insured' will, except at that 'insured's' own cost, voluntarily make any payment, assume any obligation, or incur any expense, other than for first aid, without our consent." Since Farm Bureau did not consent to Hodge's voluntary payments for a new pivot system, it argues that coverage should be excluded for this additional reason.

Hodge argues that since this case involves the interpretation of facts to determine if Farm Bureau's policy exclusion applies, a *de novo* review is not warranted and the standard of manifest error should be applied.

As to the merits, Hodge argues that the trial court was not erroneous in ruling that the policy's exclusions do not apply. Hodge asserts that the trial court correctly determined that the pivot irrigation system was not property rented or occupied by Hodge, nor was it loaned to Hodge. Hodge notes that he had no authority, right, or permission to turn on the pivot, unless specifically told to do so by Shaw.

Hodge also argues that the trial court correctly ruled that the pivot irrigation system was not personal property in his care, custody, or control. Hodge points out that Farm Bureau did not base its coverage denial on the "care, custody or control" subpart of the policy's exclusion but rather on the

7

"rent, occupy, or loaned" subpart. Hodge asserts that Farm Bureau waived this argument because it did not plead the "care, custody, or control" subpart of the exclusion as an affirmative defense. Hodge further argues that even if Farm Bureau did not waive this argument by failing to specifically plead it, it, nevertheless, lacks merit because the facts at trial showed that Hodge had to seek permission from Shaw before he did anything with the pivot system.

Hodge also argues that he had a legal obligation to pay for the damage to the pivot system caused by his employee; and, therefore, Farm Bureau is obligated to pay those sums that Hodge was obligated to pay. In response to Farm Bureau's "voluntary payments" argument, Hodge points out that Farm Bureau not only consented to the payments but instructed Hodge to move forward with the purchase of the pivot system, which is the basis of his detrimental reliance claim.

Hodge answered Farm Bureau's appeal with his own assignments of error, arguing that: (1) the trial court erred by not holding that Hodge detrimentally relied on the representations made by Farm Bureau to purchase the new pivot system; and (2) the trial court erred by not awarding Hodge the entire amount of replacing the damaged pivot system and penalties.

In support of his first assignment of error, Hodge notes that it wasn't until Farm Bureau's letter of September 10, 2018, that he had any indication that there may be a possible exclusion associated with his claim. Hodge also points out that he got mixed messages from Farm Bureau. For instance, Hopkins contacted Hodge's wife on September 21, 2018, stating that the claim had been denied, only to contact Hodge three days later to state that

8

the claim had in fact not been denied.  Hodge claims that those conflicting phone calls were a direct example of Farm Bureau's lack of knowledge if an exclusion did or did not apply.

To further bolster his detrimental reliance argument, Hodge notes that Farm Bureau's employee and representative, Hopkins, stated multiple times during their August 31, 2018, conversation that the damage was "covered," and that the only question was the amount of the coverage.  Hodge argues that, for all appearances, Hopkins had the authority to make that decision and confirm coverage.  Hodge asserts that he justifiably relied on Hopkins's representations to his detriment.

In support of his second assignment of error, Hodge argues that Farm Bureau breached its fiduciary duty to Hodge by misrepresenting pertinent facts relating to the coverage at issue and by failing to pay claims pursuant to La. R.S. 22:1893.  Hodge asserts that there was obviously confusion "in house" at Farm Bureau as to whether there was coverage and that Farm Bureau arbitrarily and capriciously came to its decision to deny coverage.  Because of this, Hodge argues that he is entitled to any general or special damages in addition to two times the amount of the new pivot system.  Hodge calculates these amounts as follows: $155,025.59 (damages) + $310,051.18 (penalty of damages x 2) + $112,360.64 (judicial interest) = $577,437.41 (total claim value).

Hodge asserts that the fact that he paid for most of the new system out of his own pocket and Shaw contributed the rest is of no moment since the entire pivot system needed to be replaced.  Hodge argues that the trial court erred when it found that Hodge was only entitled to repair costs.  Finally,

9

Hodge argues in the alternative that if he is only entitled to damages and additional penalties for the amount that he paid out-of-pocket for the new pivot system, then he would be entitled to the following amounts: $119,275.59 (damages) + $238,551.18 (penalty of damages x 2) + $86,449.48 (judicial interest) = $444,276.25 (total claim value).

Hodge requests that this court affirm the trial court's ruling that coverage applied and further that the entire replacement price of the new pivot system be awarded as damages, including any general or special damages, in addition to penalties.

In response to Hodge's answer to its appeal, Farm Bureau asserts that there is no basis for increasing the compensatory damages awarded to Hodge. Farm Bureau asserts that the trial court had three options when calculating damages: (1) the cost of restoration if the damaged item can be adequately repaired; (2) the difference in value prior to and after the damage; or (3) the cost of replacement, less reasonable depreciation, if the value before and after the damage cannot be reasonably determined. And Farm Bureau claims that the trial court correctly determined that the amount in controversy was the amount to repair the pivot, which was estimated to be $76,366.36. Farm Bureau asserts that Hodge was not entitled to a brand new pivot, which did not take into account depreciation.

Farm Bureau also argues that Hodge is not entitled to statutory penalties because Hodge cannot prove that the denial of coverage was arbitrary, capricious, or without probable cause. Farm Bureau also notes that the trial court did not find that Farm Bureau acted in bad faith, and that finding may not be set aside in absence of clear error.

10

Finally, Farm Bureau asserts that Hodge's calculations on bad faith penalties are wrong because, under La. R.S. 22:1973, the penalty is not a doubling of the contractual liability of the insurer under the policy. Instead, La. R.S. 22:1973 refers to the additional damages authorized by La. R.S. 22:1973(A).

Farm Bureau requests that the judgment of the trial court be reversed, and judgment be entered in favor of Farm Bureau declaring no coverage under the policy.

*Standard of Review*

The district court's findings of fact are subject to the manifest error standard of review: the court of appeal may not set these aside unless they are manifestly erroneous or plainly wrong. *Broussard v. State*, 12-1238 (La. 4/5/13), 113 So. 3d 175; *Rosell v. ESCO*, 549 So. 2d 840 (La. 1989). The appellate court must decide only whether the factfinder's conclusion was reasonable, not whether it was right or wrong. *Broussard v. State, supra*; *Rosell v. ESCO, supra*; *Smith v. City of Monroe*, 52,605 (La. App. 2 Cir. 4/10/19), 267 So. 3d 1218. Reversal is warranted only when the record, viewed in its entirety, (1) contains no reasonable factual basis for the district court's finding and (2) establishes that the finding is clearly wrong. *Broussard v. State, supra; Rosell v. ESCO, supra; Smith v. City of Monroe, supra*. Without such a showing, the appellate court may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. *Criswell v. Kelley*, 54,188 (La. App. 2 Cir. 3/9/22), 335 So. 3d 483.

11

We are unconvinced by Farm Bureau's argument that a *de novo* standard of review should apply since this case involves the interpretation of an insurance contract. Rather, we find that the issues of this case involve the interpretation of the facts to determine whether insurance applies. Accordingly, a *de novo* standard of review is not warranted, and we will apply the standard of manifest error.

*The Insuring Agreement*

An insurance policy is a conventional obligation that constitutes the law between the insured and the insurer, and the agreement governs the nature of their relationship. La. C.C. art. 1983. An insurance policy is a contract, which must be construed employing the general rules of interpretation of contracts. *Reynolds v. Select Properties, Ltd.*, 634 So. 2d 1180 (La. 1994); La. C.C. arts. 2045-2057. If the insurance policy's language clearly expresses the parties' intent and does not violate a statute or public policy, the policy must be enforced as written. However, if the insurance policy is susceptible to two or more reasonable interpretations, then it is considered ambiguous and must be liberally interpreted in favor of coverage. *Reynolds, supra; Litton v. White*, 49,958 (La. App. 2 Cir. 7/1/15), 169 So. 3d 819, *writ denied*, 15-1653 (La. 1/15/16), 184 So. 3d 705.

Liability insurance policies should be interpreted to effect, rather than to deny coverage. *Yount v. Maisano*, 627 So. 2d 148 (La. 1993). However, it is well-settled that unless a statute or public policy dictates otherwise, the insurers may limit liability and impose such reasonable conditions or limitations upon their insureds. *Reynolds*, 634 So. 2d at 1183; *Livingston Parish School Bd. v. Fireman's Fund Amer. Ins. Co.*, 282 So. 2d 478 (La.

1973); *Oceanonics, Inc. v. Petroleum Distrib. Co.*, 292 So. 2d 190 (La. 1974). In these circumstances, unambiguous provisions limiting liability must be given effect. *Supreme Servs. & Specialty Co. v. Sonny Greer, Inc.*, 06-1827 (La. 5/22/07), 958 So. 2d 634.

This case involves a third-party liability policy rather than a first-party property policy.[3] Like most liability policies, the policy at issue here had an "insuring agreement" that consisted of a duty to defend and a duty to indemnify.

The insuring agreement provided as follows:

> We will pay those sums that any 'insured' becomes legally obligated to pay as damages, except punitive or exemplary damages, because of 'bodily injury' or 'property damage' to which this insurance applies. We will have the right and duty to defend any 'insured' against any 'suit' seeking those damages.

It is undisputed that Shaw never sued Hodge nor did he enter into a settlement agreement with Hodge. Thus, the question before this court is whether Hodge was "legally obligated to pay" damages to a third party. While this court has been unable to find any cases which define that phrase, *Rollins v. Richardson*, 35,171 (La. App. 2 Cir. 12/7/01), 803 So. 2d 1028, *rev'd on other grounds*, 02-0556 (La. 12/4/02), 833 So. 2d 921, is instructive. There, the plaintiff brought a tort suit against her neighbors and the neighbors' insurer, Allstate, stemming from waste on the property that led to the plaintiff's child's illness. The neighbors settled with the plaintiff, and the plaintiff reserved her rights to pursue a judgment against Allstate.

---

[3] Property insurance is considered "first-party" insurance, in the sense that it covers a loss sustained by the insured, the first party to the insurance contract, as opposed to liability or "third-party" insurance, which covers the insured's liability to a third party (a nonparty to the insurance contract) for that loss.

The settlement agreement specified that the neighbors assigned to the plaintiff any claims or rights they had vis-a-vis Allstate and they transferred any rights they had to the third-party demand against Allstate.

Nonetheless, the district court dismissed the plaintiff's claims against Allstate on summary judgment, finding that the plaintiff's settlement with the neighbors extinguished Allstate's obligation to the plaintiff, as Allstate provided coverage only to the extent that its insured became legally obligated to pay damages. Thus, by virtue of the settlement, the neighbors were no longer legally obligated to the plaintiff and the plaintiff's claims against the neighbors were dismissed; thus, Allstate's indemnification obligation likewise ended. On appeal, we affirmed, explaining that:

> Allstate's policy expressly provides that its obligation of indemnification results from the Richardsons becoming "legally obligated to pay" for bodily injury. A trial solely against Allstate could result in an abstract determination that the Richardsons were negligent, but not in a judgment causing the Richardsons to "become legally obligated to pay" Rollins. Accordingly, we agree with the trial court that Allstate has shown that the Richardsons were released from the entirety of the claim against them as tortfeasors, and that the condition giving rise to Allstate's obligation for indemnity under the policy cannot occur.

*Id*. at 1033-1034.

The legal inquiry in this case is similar to that of *Rollins, supra*. Just as the neighbors were not legally obligated to pay damages to the plaintiff and therefore there was no concomitant obligation owed by Allstate, Hodge was not legally obligated to pay damages to a third party and, therefore, there is no concomitant obligation owed by Farm Bureau. *See Eagle Water, LLC v. Arch Ins. Co*., 360 F. Supp. 3d 426 (W.D. La. 2018), *aff'd sub nom. Eagle Water, L.L.C. v. Ash*, 778 F. App'x 304 (5th Cir. 2019). The feature

14

that ultimately saved the *Rollins* plaintiff on appeal to the Louisiana Supreme Court – a fact question about the intent of the parties – is notably absent here.

In essence, Hodge decided on his own that he was 100 percent at fault and that Farm Bureau should fund a brand-new pivot irrigation system. However, under the explicit terms of the insuring agreement, Farm Bureau is not compelled to fund anything absent a legal obligation on the part of Hodge to pay a third party for damages. Further complicating this matter is that Hodge is essentially asking Farm Bureau to pay himself, notwithstanding the fact that the policy at issue is a third-party liability policy rather than a first-party property one.

The terms of the insurance contract are not ambiguous, nor are they subject to more than one interpretation. The parties are bound by the terms of the policy to which they agreed. That policy renders Farm Bureau liable only when Hodge becomes legally obligated to pay a third party for damages – a situation that never arose in this case. Since this prerequisite event never came to pass, Farm Bureau's obligation never began.

Accordingly, we hold that it was manifest error for the trial court to assume that Hodge triggered the insuring agreement.

*The Exclusion*

Because we hold that there was no coverage due to Hodge's failure to trigger the insuring agreement, an analysis of the various exclusions is not critical to our holding. However, the "personal property in the care, custody or control" exclusion provides an additional basis for our ruling.

15

The policy excludes coverage for "personal property in the care, custody or control of any 'insured' other than your employee."  During the pivot's entire life span, Hodge exercised exclusive control over it.  He was the only one who turned it on or off.  He winterized it, put fuel in it, changed its oil, aired its tires, and built bridges for its wheels.

In 2017, Hodge paid for upgrades to the pivot, installing several "back booms"[4] on the pivot.  Hodge paid $13,273.37 out of his own pocket for these upgrades.  Hodge also paid to have the system winterized every year.

In short, Hodge treated the pivot as if it were his own.  He was the only one that used it, maintained it, turned it on, and kept it running.

Louisiana jurisprudence recognizes two distinct circumstances under which this type of exclusion is applied: (1) the insured has actual physical possession of or control over the property; and (2) the insured has a proprietary interest in and derives a monetary benefit from the property.  *Reynolds,* 634 So. 2d at 1184.

Here, both situations are present.  Hodge clearly had physical possession of the pivot.  He also derived a monetary benefit from the pivot in that he used it to irrigate his crops, which in turn created a larger yield.

Accordingly, we hold that the trial court was manifestly erroneous in holding that Hodge did not have care, custody, or control over the pivot system such that the policy's exclusion did not apply.

---

[4]    Back booms on a pivot irrigation system are intended to keep its wheels from getting stuck.

*Detrimental Reliance*

The doctrine of detrimental reliance is designed to prevent injustice by barring a party from taking a position contrary to his prior acts, admissions, representations, or silence. *John Bailey Contractor, Inc. v. State, Dept. of Transp. & Dev.*, 439 So. 2d 1055 (La. 1983); *Orr v. Bancroft Bag, Inc.*, 29,046 (La. App. 2 Cir. 1/22/97), 687 So. 2d 1068; *Knight v. State*, 30,902 (La. App. 2 Cir. 9/28/98), 718 So. 2d 646. To recover under a theory of detrimental reliance, the plaintiff must prove three elements: a representation by conduct or work; justifiable reliance thereon; and a change of position to one's detriment because of the reliance. *Jackson v. Lare*, 34,124 (La. App. 2 Cir. 11/1/00), 779 So. 2d 808. "Claims of detrimental reliance must be examined strictly and carefully" and are not favored under Louisiana law. *First Louisiana Bank v. Morris & Dickson, Co., LLC*, 45,668, p. 16 (La. App. 2 Cir. 11/3/10), 55 So. 3d 815, 825.

The facts of this case do not support a detrimental reliance claim. On September 5, 2018, Hopkins told Buza, the representative from Chicot Irrigation, Inc., that there may be a "technicality" with coverage. Buza relayed that information to Hodge on the same day. By letter dated September 6, 2018, Farm Bureau advised that the policy's "Damage to Property" exclusion may prohibit coverage.

On September 7, 2018, Buza proceeded to order the new pivot system. On September 10, 2018, Hodge knew for sure that Farm Bureau was asserting a coverage defense. According to Buza, Hodge could have cancelled the order of the brand-new pivot system at any time up until the

new pivot was loaded onto a truck for transport to Tamarak. That event occurred on September 17, 2018. Hodge did not cancel the order.

Essentially, five to ten days after the Hopkins visit, Hodge knew that Farm Bureau might deny coverage. Nevertheless, Hodge moved forward with buying a brand-new pivot system.

We agree with the trial court's assessment that Hodge should have known that there was no guarantee the claim would be paid and that any reliance by Hodge on the Hopkins statements was not justifiable. Accordingly, we find no manifest error in the trial court's ruling denying Hodge's detrimental reliance claim.

*Bad Faith Penalties*

Hodge also seeks extracontractual damages under La. R.S. 22:1892 and 22:1973. The Louisiana Supreme Court has held that these two statutes proscribe "virtually identical" conduct and that "the primary difference is the time periods allowed for payment." *Reed v. State Farm Mut. Auto. Ins.*, 03-0107 (La. 10/21/03), 857 So. 2d 1012. To succeed under either statute, the plaintiff must prove by a preponderance of evidence that the denial of coverage was "arbitrary, capricious, or without probable cause." *Guillory v. Lee*, 09-0075 (La. 6/26/09), 16 So. 3d 1104.

A refusal to pay coverage is "arbitrary, capricious, or without probable cause," when the denial of payment is "vexatious, meaning unjustified, without reasonable or probable cause or excuse." *Guillory*, *supra* at 1126-27. If the insurer has a reasonable basis to defend the claim and acts in good-faith reliance on that defense, then the denial of coverage is not arbitrary, capricious, or without probable cause. *Id.* at 1127. Put another

18

way, "where the insurer has legitimate doubts about coverage, the insurer has the right to litigate these questionable claims without being subjected to damages and penalties." *Calogero v. Safeway Ins. Co. of La.*, 99-1625 (La. 1/19/00), 753 So. 2d 170.

Here, there is no evidence that Farm Bureau's conduct in denying coverage was arbitrary and capricious. Farm Bureau did not refuse to defend Hodge against a lawsuit, nor did it fail to pay sums that Hodge was legally obligated to pay. Accordingly, we find no manifest error in the trial court's determination that Hodge is not entitled to bad-faith penalties pursuant to La. R.S. 22:1892 and 22:1973.

## CONCLUSION

For the foregoing reasons, we REVERSE the trial court's ruling that Farm Bureau's insurance policy provided coverage to Hodge for the damaged pivot system, and Hodge's answer to Farm Bureau's appeal is denied. We AFFIRM the trial court's ruling in favor of Farm Bureau and against Hodge on the issues of detrimental reliance and bad-faith penalties. Costs are assessed to Hodge.

**REVERSED IN PART, AFFIRMED IN PART.**

**HUNTER, J.**, concurring in part and dissenting in part.

I concur in the majority's decision to affirm the trial court's ruling in favor of Farm Bureau and against plaintiff on the issues of detrimental reliance and bad faith penalties. However, I dissent from the majority's reversal of the trial court's ruling with regard to insurance coverage.

An insurance policy is a contract between the parties and should be construed using the general rules for the interpretation of contracts set forth in our Civil Code. *Kazan v. Red Lion Hotels Corp.*, 21-01820 (La. 6/29/22), 346 So. 3d 267; *Sims v. Mulhearn Funeral Home, Inc.*, 07-0054 (La. 5/22/07), 956 So. 2d 583. Interpretation of an insurance policy is the determination of the common intent of the parties – this analysis starts by examining the words of the policy itself. *Id*. Words and phrases in an insurance policy must be given their generally prevailing meaning unless they are words of art or have acquired a technical meaning. *Id*. When the words of an insurance policy are clear and explicit and do not lead to absurd consequences, courts must enforce the language as written. *Id*.

The liability policy at issue states, "We will pay those sums that any 'insured' becomes legally obligated to pay as damages[.]" The policy also contains a "Damage to Property" exclusion (Section I, Coverage H, Paragraph (2)), which provides coverage is excluded for:

> (1) Property you own;
> (2) Property you rent or occupy; [and]
> ***
> (4) Property loaned to you[.]
> ***

In the instant case, Hodge's employee damaged the pivot system, which was not in use at the time of the incident. As a result, Hodge, as the

employer, became "answerable for the damage caused by its employee in the exercise of the functions in which the worker is employed." La. C.C. art. 2320; *Lowe v. Old Am. Indem. Co.*, 54,656 (La. App. 2 Cir. 8/10/22), 345 So. 3d 1171. Therefore, Hodge, as the employer/insured, became legally obligated to pay, and, as Hodge's insurer, Farm Bureau (under the explicit terms of the policy) became obligated to pay. Consequently, I believe Hodge had a right of action.

Additionally, under the facts of this case, I believe the trial court did not err in finding the rent/loan exclusion does not apply. It is clear from the testimony Hodge did not own the pivot system, and he was not using, renting or borrowing the system at the time of the incident. Further, I believe Farm Bureau had a reasonable basis to defend the claim and Hodge is not entitled to penalties or attorney fees.