Judgment rendered May 21, 2025.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 56,228-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

SAFEWAY INSURANCE                    Plaintiff-Appellant
COMPANY OF LOUISIANA

versus

NATIONAL GENERAL                     Defendant-Appellee
INSURANCE COMPANY

* * * * *

Appealed from the
Monroe City Court for the
Parish of Ouachita, Louisiana
Trial Court No. 2022CV00245

Honorable Aisha S. Clark, Judge

* * * * *

TRACY L. OAKLEY                      Counsel for Appellant


DONOVAN & LAWLER, APLC              Counsel for Appellee
By: P.M. Donovan


* * * * *

Before STONE, COX, THOMPSON, JJ.



STONE, J., dissents with written reasons.

**THOMPSON, J.**

This matter involves two insurance companies dueling over which should be the primary insurer for the at-fault driver, who asserted his personal vehicle was being repaired, when he caused an accident while using his coworker's vehicle. The policy of insurance for the driver extends coverage for temporary replacement vehicles but denied coverage here due to the length of time their insured's vehicle was allegedly undergoing repairs. The trial court agreed the insurance policy language did not apply and found as primary insurance the policy issued for the owner of the borrowed truck. That judgment was appealed. Distinguishing these facts from prior opinions of this court on the language in insurance policies regarding temporary replacement vehicles, and for the reasons set forth below, we affirm.

## FACTS AND PROCEDURAL HISTORY

On February 27, 2021, at approximately 10:48 p.m., an accident occurred on Outlet Road in Monroe, Louisiana. Samuel Jackson ("Jackson") was traveling southbound on Outlet Road, driving with permission a 2010 Ford F-150 (the "F-150") owned by Neal Atkins ("Atkins"), when he lost control of the truck and struck a 2014 Nissan Juke (the "Juke"), owned and operated by Sharon M. Presley ("Presley"). The Juke was insured by State Farm Mutual Automobile Insurance Company ("State Farm"). Safeway Insurance Company of Louisiana ("Safeway") issued a policy of insurance to Atkins, and the F-150 was the insured vehicle under that policy. Jackson had a policy of insurance in his name issued by

National General Insurance Company ("NGIC") covering a 2002 Toyota 4Runner, but Jackson was not driving it because it needed repairs.

Due to the accident, Presley incurred rental expenses and property damage in the amount of $3,834.28, as well as bodily injuries requiring medical treatment. Jackson's insurer, NGIC, declined coverage and denied that they were the primary or pro-rata insurer for Jackson while he was driving the F-150. As the claim progressed, Safeway paid Presley $18,834.28, with $15,000 being paid for bodily injuries and $3,834.28 for property damage. Safeway then filed suit against NGIC for full or pro-rata reimbursement of the amount paid to Presley.

A trial was held to determine whether Atkins' F-150 was a temporary substitute, as defined by R.S. 22:1296, for Jackson's 2002 Toyota 4Runner, or whether Safeway and NGIC policies were co-primary and provided pro-rata coverage to Jackson at the time of the accident. Atkins and Jackson both testified. Atkins testified that he let Jackson borrow the F-150 to get home from a party because Jackson could not drive their company truck on weekends. Jackson testified that his 4Runner was in the shop for at least two months prior to the accident and that he used the F-150 once or twice when they were working together. He testified that the accident occurred during the first time he used the F-150 outside of work.

The trial court issued its ruling on the record, after taking the matter under advisement, identifying the primary issue as whether the Safeway policy was the primary or collateral insurance for the accident. It concluded that the Safeway policy *was* the proper primary insurance, relying on the fact that the 4Runner was allegedly in a shop or under repair far longer than

2

coverage provided for a temporary vehicle anticipated or provided for in NGIC's policy, noting that Jackson did not know the whereabouts of the vehicle or the person who had custody of it. It determined that the F-150 was not a temporary substitute under the NGIC policy. Safeway appeals this judgment.

## DISCUSSION

Safeway asserts three assignments of error, which are each addressed below.

**First Assignment of Error: The trial court legally erred in applying La. R.S. 22:1296.1.**

In its first assignment of error, Safeway argues that the trial court erred in applying La. R.S. 22:1296.1 to the case at bar. La. R.S. 22:1296.1 provides:

> A. An approved insurance company, reciprocal or exchange, writing automobile liability, uninsured, underinsured, or medical payments coverage shall not exclude the benefits of such coverage under its policy to an insured operating a vehicle not owned by the insured if all of the following requirements are satisfied:
>
> (1) The coverage is in full force and effect.
>
> (2) The insured is operating a vehicle not owned by the insured with the express or implied permission of the vehicle's owner.
>
> (3) The vehicle not owned by the insured that is being operated by the insured is not provided, furnished, or available to the insured on a regular basis.
>
> B. Coverage provided pursuant to this Section shall be secondary to the vehicle owner's insurance policy.
>
> C. If the coverage provided pursuant to this Section is included within the coverage provided pursuant to R.S. 22:1296, the provisions of R.S. 22:1296 shall determine which coverage is primary.

Safeway contends that La. R.S. 22:1296.1 is newly created legislation that was not in effect when the accident occurred and that it was not specifically designated to apply retroactively. Our review of the trial court's written reasons for judgment evidences the fact that the trial court reproduced La. R.S. 22:1296.1 twice in the written opinion, once under the correct headings and once under the heading La. R.S. 22:1296. NGIC contends that there is no evidence that the trial court relied solely on La. R.S. 22:1296.1 and the fact that the court reproduced the statute in two places was likely a typographical error. We agree. The trial court's analysis and findings in the judgment do not rest solely on a retroactive application of La. R.S. 22:1296.1 but rather, evidence an application of La. R.S. 22:1296(A), which will be discussed below. As such, this assignment of error is without merit.

**<u>Second Assignment of Error</u>: The trial court erred in finding that the 2010 Ford F-150 owned by Neal Atkins was not a "temporary substitute motor vehicle" as defined by La. R.S. 22:1296(A).**

Safeway next argues that the trial court erred in finding that the F-150 was not a temporary substitute motor vehicle as defined by La. R.S. 22:1296(A).

An insurance policy is a contract between the parties and should be construed using the general interpretation of contracts. *Safeway Ins. Co. of Louisiana v. Gov. Employees Ins. Co.*, 54,087 (La. App. 2 Cir. 2/23/22), 361 So. 3d 1006. Every insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy, and as amplified, extended, or modified by any rider, endorsement, or application attached to or made part of the policy. La. R.S. 22:881. Each provision in the policy must be interpreted in light of the other provisions so that each is

4

given meaning; one provision of the insurance contract should not be construed separately at the expense of disregarding other provisions. La. C.C. art. 2050. The role of the judiciary in interpreting insurance contracts is to ascertain the common intent of the parties as reflected by the words of the policy. *Id.*; La. C.C. art. 2045. When the words of an insurance contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent, and the agreement must be enforced as written. *See* La. C.C. art. 2046.

The determination of whether a contract is clear or ambiguous is a question of law. *Sims v. Mulhearn Funeral Home, Inc.*, 07-0054 (La. 05/22/07), 956 So. 2d 583; *State Farm Mut. Auto. Ins. Co. v. Safeway Ins. Co.*, 50,098 (La. App. 2 Cir. 9/30/15), 180 So. 3d 450. If the insurance policy is susceptible to two or more reasonable interpretations, then it is considered ambiguous and must be liberally interpreted in favor of coverage. *Supreme Servs. & Specialty Co. v. Sonny Greer, Inc.*, 06-1827 (La. 05/22/07), 958 So. 2d 634. It is well settled that unless a statute or public policy dictates otherwise, the insurers may limit liability and impose such reasonable conditions or limitations upon their insureds. *Id.* Equivocal provisions seeking to narrow an insurer's obligation are strictly construed against the insurer. *State Farm*, *supra*. Any policy provision that narrows or restricts statutorily mandated coverage will not be enforced. *Marcus v. Hanover Ins. Co.*, 98-2040 (La. 06/04/99), 740 So. 2d 603. An insurer is not at liberty to limit its liability and impose conditions upon its obligations that conflict with statutory law or public policy. *Id.*

Louisiana R.S. 22:1296(A), the statute applicable to temporary borrowed vehicles and rental vehicles, provides:

> Every approved insurance company, reciprocal or exchange, writing automobile liability, physical damage, or collision insurance, shall extend to temporary substitute motor vehicles as defined in the applicable insurance policy and rental motor vehicles any and all such insurance coverage in effect in the original policy or policies. Where an insured has coverage on a single or multiple vehicles, at least one of which has comprehensive and collision or liability insurance coverage, those coverages shall apply to the temporary substitute motor vehicle, as defined in the applicable insurance policy, or rental motor vehicle. Such insurance shall be primary. However, if other automobile insurance coverage or financial responsibility protection is purchased by the insured for the temporary substitute or rental motor vehicle, that coverage shall become primary[.]

A "temporary" vehicle is one that is used for a limited time, as opposed to a vehicle that is used permanently, and the term "substitute" connotes the replacement of one thing for another. *State Farm*, *supra*.

In support of its argument, Safeway cites this Court's opinion in *Litton v. Safeway Ins. Co. of Louisiana*, 49,958 (La. App. 2 Cir. 7/1/15), 169 So. 3d 819, *writ denied*, 15-1653 (La. 1/15/16), 184 So. 3d 705, wherein the Safeway policy language defined "temporary substitute automobile" as a vehicle "temporarily used as a substitute for the owned automobile when the owned automobile is being serviced or repaired by a person engaged in the business of selling, repairing, or servicing motor vehicles." This Court found that the provision at issue in the policy was impermissibly narrow and improperly restricted insurance coverage. There, the driver's vehicle broke down the day before he needed to leave for a trip, so he borrowed his mother's car. He did not have the opportunity to have his vehicle sent to a repair shop prior to the accident. This Court stated, "[a] provision, such as

6

the one set forth in the Safeway policy, will never extend coverage to vehicles in situations where the owner may not be in a position to have the vehicle repaired at that time, or to an owner who may prefer to perform the repairs himself."

Safeway also cites *State Farm*, *supra*, in which Safeway's policy language required a temporary substitute automobile to be serviced or repaired by a person engaged in the business of selling, repairing, or servicing motor vehicles. In that case, the day after her vehicle would not start, the driver needed a temporary solution to get her children to daycare, and she borrowed a vehicle. She was involved in an accident that day while driving the borrowed vehicle. A few days after the accident, she had her vehicle taken to a mechanic and repaired. This Court found that "it is unreasonable for Safeway to require that its insured immediately deposit a disabled vehicle in a mechanic shop before extending coverage to a temporary replacement; the temporal, logistical, and financial burdens that this places on the insured are contrary to the legislature's intent in requiring a temporary substitute vehicle be defined and coverage extended to such."

Safeway contends that the temporary substitute vehicle provision in NGIC's insurance has been found by this Court to impermissibly limit the statutory mandate and is in conflict with La. R.S. 22:1296. As such, Safeway contends the NGIC policy should have been primary, and it is owed repayment. We find the current matter to be factually distinguishable from our previous opinions in *Litton*, *supra*, and *State Farm*, *supra*. In both of those cases, the drivers' vehicles broke down or had mechanical difficulties the day before they borrowed a vehicle from someone else, and this Court

found that it was unreasonable to expect a person to immediately bring a malfunctioning vehicle to a repair shop or to require that a person who would rather repair the car himself to spend the money to take it to a shop. We acknowledge our holdings in those cases and reiterate that the language in the policy requiring a vehicle to be serviced or repaired by a person engaged in the business of selling, repairing, or servicing motor vehicles violates public policy and is impermissibly narrow.

However, in the present matter, Jackson was already without his 4Runner for more than two months prior to the accident. As noted above, the NGIC policy defined a "temporary vehicle" as "any vehicle or trailer not owned by you…while **temporarily** used as a substitute for the **covered auto** while the covered auto is being serviced or repaired by a facility engaged in the business of selling, repairing, or servicing motor vehicles." The NGIC policy defined a "Covered Auto" as:

> Any auto not owned by you while used on a temporary basis as a substitute for any other auto described in this definition which is out of normal use because of its: a. breakdown; b. repair; c. servicing; d. loss; or e. destruction. **Coverage for a temporary substitute auto shall not exceed sixty (60) days.**

Here, the issue is not **where** Jackson's 4Runner was being serviced or repaired at the time of the accident, but rather, the fact that the 4Runner had not been in Jackson's possession for more than 60 days prior to the accident. As the trial court noted, at the time of trial, Jackson had still not obtained possession of the 4Runner. He had not possessed the 4Runner in over three years, did not know where it was located, or who had possession of the vehicle. This Court's holdings in *Litton*, *supra*, and *State Farm*, *supra*, were intended to give drivers a reasonable time to move their nonfunctioning

8

vehicles to a mechanic or to fix the vehicles themselves. Those holdings were not intended to protect drivers who allow their vehicles to be removed from their possession for an extended and indeterminate time, while maintaining primary insurance coverage. Here, by the date of the accident Jackson's 4Runner had been out of use and out of his possession for greater than any reasonable window of time which could be argued to be "temporary," and there was no evidence it has ever been in any stage of undergoing any actual repair (or ever did years later by the time of trial). The F-150 might be considered a replacement vehicle, but it was not "temporary" as provided for in the NGIC policy and, therefore, NGIC would not be the primary insurer. As such, we find the matter before us to be factually distinct from those in *Litton*, *supra*, and *State Farm*, *supra*, and affirm the trial court's finding that Safeway's policy was primary in the present matter. This assignment of error is without merit.

**Third Assignment of Error: The trial court erred in not applying the "other insurance" clauses contained in the Imperial Fire and Casualty Insurance Company policy and the Safeway Insurance Company of Louisiana policy.**

Finally, Safeway argues that the trial court erred in not applying the "other insurance" clauses contained in the NGIC policy and the Safeway policy. Safeway's policy states "[i]f there is other insurance which covers the insured's liability with respect to a claim also covered by this policy, Part I of this policy will apply only as excess to such other insurance." The NGIC policy states:

> If there is other applicable liability insurance or bond, we will pay only our share of damages. Our share is the proportion that our limit of liability bears to the total of all applicable limits. Any insurance we provide for an: 1. Auto, other than covered

9

auto…will be excess over any other collectible insurance, self insurance, or bond.

This Court has stated that "where one policy is primary and the other is a true excess policy, the 'excess' and 'other insurance' clauses are not mutually repugnant and the true excess policy does not provide coverage until the primary policy limits are exhausted. *Maynor v. Vosburg*, 25,922 (La. App. 2 Cir. 11/28/94), 648 So. 2d 411, *writ denied*, 95-0409 (La. 4/28/95), 653 So. 2d 590. As noted above, we have determined that Safeway's insurance is primary in this matter, and as such, NGIC's "other insurance" provision is not applicable until the primary insurance is exhausted. As such, this assignment of error is without merit.

## CONCLUSION

For the reasons set forth above, the trial court's judgment is affirmed. Costs of this appeal are assessed to Safeway Insurance Company.

**AFFIRMED.**

**STONE, J., dissenting.**

I respectfully dissent. In my opinion, the majority's interpretation of the NGIC policy regarding the 60-day limit on temporary substitute vehicle coverage is incorrect. My construction, if adopted, would change the outcome of this case.

Jackson's testimony warrants reiteration. Jackson testified that, during the approximate two months immediately preceding the accident, he had driven the Atkins vehicle a time or two during days in which he and Atkins were working a job (tree removal) together, but not otherwise. Jackson also testified that the motor vehicle accident occurred during the first time he used the Atkins vehicle outside of work. Jackson had a 4Runner covered by his NGIC policy at the time of the accident. He stated that about 60 days prior to the accident, he placed his vehicle at a fly-by-night mechanic shop for repairs but the mechanic and his 4Runner disappeared. Admittedly, Jackson did not file a police report.

Nothing in Atkins' or Jackson's testimony suggested that Jackson had a temporary substitute vehicle to use besides his use of the Atkins vehicle on the day of the accident. In fact, when asked about his access to any other temporary substitute vehicle, Jackson replied that he could get a ride from someone, i.e., as a passenger, not as a driver.

**Law and relevant policy language**

The applicable statute is La. R.S. 22:1296(A), which states that automobile liability insurance "shall extend to temporary substitute motor vehicles as defined in the applicable insurance policy." An insurance policy is a contract between the parties and should be construed using the general

1

interpretation of contracts. *Safeway Ins. Co. of Louisiana v. Gov. Employees Ins. Co.*, 54,087 (La. App. 2 Cir. 2/23/22), 361 So. 3d 1006. La. C.C. art. 2056 requires ambiguous policy provisions to be construed in favor of coverage, as it is the insurer who furnishes the standard form agreement. *Supreme Servs. & Specialty Co. v. Sonny Greer, Inc.*, 06-1827 (La. 05/22/07), 958 So. 2d 634, 638.

NGIC's defense is based on its policy definition of "temporary vehicle," which states:

> 'Temporary vehicle' means any vehicle or trailer not owned by you or a resident of your household, while temporarily used as a substitute for the covered auto while the covered auto is <u>being serviced or repaired by a facility engaged in the business of selling, repairing, or servicing motor vehicles.</u> The insurance coverage provided under this policy with respect to a temporary substitute vehicle shall be primary. However, if other automobile insurance coverage or financial responsibility protection is purchased by you for the temporary substitute vehicle, that purchased coverage shall be primary and the coverage provided under this policy shall be excess coverage only. (Underline added).

Safeway correctly argues that the underlined language is unenforceable, and that without it, the Atkins vehicle fits the definition.[1] The NGIC policy's statement of liability coverage limits coverage to claims stemming from the insured's use/maintenance/ownership of a covered auto. However, the NGIC policy's definition of "covered auto" adds that "coverage for a…temporary substitute vehicle shall not exceed 60 days."

The NGIC policy is silent regarding when the 60 days begin to run or whether they continue to run on days that the insured has no access to a

---

[1] Safeway cites *Litton v. White*, 49,958 (La. App. 2 Cir. 07/0l/15), 169 So. 3d 819, and *State Farm Mutual Auto. Ins. Co. v. Safeway Ins. Co.*, 50,098, 50,099 (La. App. 2 Cir 9/30/15), 180 So. 3d 450; both held that such language was without effect because it conflicted with legislation.

temporary substitute vehicle. Furthermore, it certainly does *not* state that the 60 days start to run *before* the insured gains access to a temporary substitute vehicle, or that the 60 days continue to run on days that the insured has no temporary substitute vehicle to use. The trial court and the majority — in effect — *supplied* those NGIC-favorable policy provisions by holding that the Atkins vehicle was not a temporary substitute vehicle because Jackson had been dispossessed of his own vehicle for more than 60 days. In other words, the trial court and the majority have interpreted the policy to mean that the 60-day coverage limit for a temporary substitute vehicle began to run when Jackson's 4Runner went to the alleged repair shop, and continued to run regardless of whether Jackson had a temporary substitute vehicle to use or not.

I disagree with that interpretation and suggest that the 60-day limit started to run and continued to run only on days when Jackson had a temporary substitute vehicle to use. Pursuant to La. C.C. art. 2056, this court should adopt my construction. Otherwise, the 60-day limit on temporary substitute vehicle coverage started to run *before* there existed a temporary substitute vehicle to cover *and continued* to run on days when the insured had no temporary substitute vehicle to cover.

Indeed, NGIC is the author and master of its own policy language and is responsible for making it clear. As previously stated, my construction of the 60-day limit would change the outcome of the case. The trial testimony mathematically precludes a finding that Jackson had a temporary substitute vehicle available to him for more than 60 days between Jackson giving custody of his 4Runner to the mechanic and the subject accident.

3

It could be argued that my construction of the 60-day limit would impose an unmanageable standard — in contrast to the bright-line rule created by the majority's construction. I would respond that: (1) NGIC is free to amend its policy language to create a bright-line rule, so long as it complies with statutory mandates for temporary substitute vehicle coverage; and (2) NGIC should not benefit from its own failure to be clear and unambiguous in its policy language. Not all insureds have the luxury of being able to borrow a car for the entire duration of their primary vehicle's inoperability.

Moreover, Jackson purchased an auto insurance policy from NGIC which was in effect on the date of the accident. To allow NGIC to now escape its responsibility based on an unrealistic application of the 60-day limit would be to grant NGIC a windfall and would rob Jackson of the coverage he paid NGIC to provide him. It would also shift responsibility to Atkins' insurer even if Atkins was completely nonnegligent in causing the subject accident.